**DIAGNOSTIC MARKETING INTERNATIONAL, INC., d/b/a DMI, Plaintiff,**

v.

**DIAMED, INC., Defendant.**

**Civ. No. 88–0311–P.**

United States District Court, D. Maine.

Feb. 15, 1989.

Elizabeth A. Hoglund, Portland, Me., for plaintiff.

Martin L. Wilk, Eaton, Peabody, Bradford & Veague, Brunswick, Me., for defendant.

MEMORANDUM OF DECISION AND ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

GENE CARTER, District Judge.

## I.  INTRODUCTION

Before the Court is Defendant's Motion for Summary Judgment, filed on December

28, 1988 as Docket No. 88–0311–P. Plaintiff Diagnostic Marketing International, Inc. seeks a preliminary injunction ordering Defendant Diamed, Inc. to refrain from doing business under or using in any way the initials "DMI" in the course of Defendant's business operation or otherwise. Defendant opposes Plaintiff's motion for preliminary injunction and moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, claiming that there exists no issue of material fact and that, therefore, Defendant is entitled to summary judgment as a matter of law. For the purposes of the Court's analysis, the motions are considered together. The Court hereby denies Plaintiff's motion for preliminary injunction and grants Defendant's motion for summary judgment.

## II. FACTUAL BACKGROUND

The following relevant facts are undisputed except as specifically indicated. On March 13, 1980, Data Management, Inc., a Maine corporation not a party to this action, filed an application for registration of trademarks and service marks with the Maine Secretary of State pursuant to 10 M.R.S.A. section 1522. This application was for a combined service/trade mark in a stylized version of the letters DMI, and listed the goods and services to which the mark would be applied as "printed matter, office requisites, computer software services and products and related advertising and promotion ... [a]dvertising and business."

Defendant Diamed, Inc. has been incorporated as a Maine corporation since 1983, doing business in the manufacture and sale of biomedical research supplies. Defendant claims that in 1983 it began using the DMI initials in conjunction with its full corporate name on all its stationery and on a sign on its premises. Plaintiff does not specifically dispute this, and acknowledges that Defendant was using the DMI initials on its stationery in August 1986, when Plaintiff received an invoice from Defendant bearing the DMI initials. Defendant's use of the DMI initials has continued until November 1988, when it claims it ceased such use. Plaintiff disputes Defendant's contention that Defendant ceased such use in November.

Plaintiff was incorporated in Maine in 1985 and is involved in the importation, sale and distribution of biomedical research supplies. Plaintiff claims, and Defendant does not dispute, that in January 1986, Plaintiff applied to the Secretary of State for permission to do business under the assumed name of DMI pursuant to 13–A M.R.S.A. section 307. Plaintiff further claims, and Defendant does not deny, that permission was denied by the Secretary of State on the basis that Data Management, Inc. held a registered trade/service mark in the DMI initials. As indicated above, Plaintiff became aware in August 1986 that Defendant was using the DMI initials on its business stationery. Defendant has never registered the DMI initials as a service or trade mark pursuant to 10 M.R.S.A. section 1522, nor has it registered to do business under the initials DMI as an assumed name pursuant to 13–A M.R.S.A. section 307.

On January 26, 1987, Plaintiff obtained a default judgment in its favor in the Maine Superior Court for Cumberland County, finding that Data Management, Inc. had abandoned its right to use the assumed name DMI for purposes of 10 M.R.S.A. section 1527(1)(d)(1) and 10 M.R.S.A. section 1522(1)(F). On January 27, 1987, Plaintiff filed a statement of intention to do business under the assumed name of DMI with the Secretary of State pursuant to 13–A M.R.S.A. section 307. Permission to do so was granted on February 4, 1987, and Plaintiff began immediately thereafter to use the initials DMI as its assumed name.

Plaintiff filed this action with the Court on November 16, 1988, alleging infringement of an unregistered trademark under the Lanham Act, 15 U.S.C. section 1125(a), as well as violations of state law under 10 M.R.S.A. section 1211, *et seq.*, 13–A M.R.S. A. section 307, and state common law. Plaintiff seeks preliminary and permanent injunctive relief, as well as damages. Accompanying Plaintiff's complaint is a motion for preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure. In response, Defendant filed a joint

objection to the motion for preliminary injunction and a motion for summary judgment. The Court considers both motions together and concludes that the undisputed facts before it lead to the conclusion that Defendant is entitled to summary judgment as a matter of law.

## III. ANALYSIS

In its complaint, Plaintiff raises four causes of action under federal and state law for which it seeks both injunctive relief and damages for Defendant's use of the initials DMI. Plaintiff alleges that Defendant's use constitutes an infringement of an unregistered trademark, in violation of section 1125(a) of the Lanham Act, 15 U.S. C. § 1051, *et seq.* Plaintiff also alleges that Defendant's use constitutes a violation of the Maine Deceptive Trade Practices Act, 10 M.R.S.A. section 1211, *et seq.*, unfair competition under common law, and an unauthorized use of an assumed name in violation of 13–A M.R.S.A. section 307. The Court addresses the federal claim and the state law claims separately.

### A. *Federal law—The Lanham Act*

■ Section 1125(a) of the Lanham Act provides a statutory remedy for the holder of an unregistered trademark against anyone who makes an unauthorized use of that trademark. Section 1125(a) states in pertinent part:

> Any person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods, a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, ... shall be liable to a civil action by any person doing business in the locality falsely indicated as that of origin or in the region in which said locality is situated, or by any person who believes that he is or is likely to be damaged by the use of any such false description or representation.

15 U.S.C. § 1125(a). Under this section, a trademark holder enjoys statutory rights regardless of whether or not a disputed trademark has been registered pursuant to the Lanham Act. *Keebler Co. v. Rovira Biscuit Corp.*, 624 F.2d 366 (1st Cir.1980).

■ A plaintiff is entitled to protection under section 1125(a) of the Lanham Act if it can establish a right to exclusive use of the mark. *Id.* at 373. It is axiomatic that the only way to establish a trade or service mark is by actual use of the mark. The exclusive right to a distinctive mark belongs to the one who first uses it in connection with a particular line of business. *Volkswagenwerk Aktiengesellschaft v. Wheeler*, 814 F.2d 812, 815 (1st Cir.1987); R. Callman, 3 The Law of Unfair Competition Trademarks and Monopolies § 19.01 at 3 (4th ed. 1983). Thus, where the right to use a particular trademark is contested, the priority of appropriation and use determines which litigant will prevail in its use. *United Drug Co. v. Rectanus*, 248 U.S. 90, 100, 39 S.Ct. 48, 51, 63 L.Ed. 141 (1918).

■ It is undisputed on the present record that Defendant's use of the DMI initials precedes Plaintiff's. Plaintiff has not challenged Defendant's claim, supported by the affidavit of its vice-president of operations, to use of the DMI initials on its stationery since 1983 and on a sign on its premises since 1985. Indeed, Plaintiff expressly acknowledges that it became aware of Defendant's use of the DMI initials sometime in 1986, presumably when it received a transaction invoice dated August 29, 1986 from Defendant, on which the DMI initials appeared on Defendant's letterhead. Plaintiff and Defendant agree that Plaintiff did not begin using the DMI initials as its logo until January of 1987. Accordingly, the record before the Court shows clearly that Defendant's use preceded Plaintiff's.

In its memorandum in opposition to Defendant's motion for summary judgment, Plaintiff claims that a demonstration of "secondary meaning" is necessary to establish a right to exclusive use of a mark. The secondary meaning doctrine states that

> words which have a primary meaning of their own ... may by long use in connection with a particular product, come to be

known by the public as specifically designating that product.

*Volkswagenwerk Aktiengesellschaft v. Wheeler*, 814 F.2d at 816, *citing Volkswagenwerk AG v. Rickard*, 492 F.2d 474, 477 (5th Cir.1974). The establishment of a secondary meaning in a word or group of letters is an issue of fact. *See Volkswagenwerk Aktiengesellschaft v. Wheeler*, 814 F.2d at 816. According to Plaintiff's argument, since it is a question of fact whether a secondary meaning in the letters DMI has developed, the Court is precluded from issuing summary judgment.

The instant case, however, is factually distinct from other cases in which the secondary meaning of a trademark becomes a pivotal question. Such cases typically involve a plaintiff who has established a mark by prior use and who sues to prevent the use of a similar mark by defendant. *See, e.g., National Football League Properties, Inc. v. Wichita Falls Sportswear, Inc.*, 532 F.Supp. 651 (W.D.Wash.1982) (plaintiff National Football League Properties sued to prevent defendant's use of league insignia on replica league jerseys); *D.C. Comics, Inc. v. Powers*, 465 F.Supp. 843 (S.D.N.Y.1978) (plaintiff, publisher of Superman comics since 1938, sued to prevent defendant's use of term "Daily Planet" beginning in 1969). In such cases, the plaintiff's priority in time of use of the contested marks is not in dispute, and the parties' analysis focuses instead on whether or not the plaintiff's use was sufficient to establish a secondary meaning. *National Football League Properties, Inc. v. Wichita Falls Sportswear, Inc.*, 532 F.Supp. at 657; *D.C. Comics, Inc. v. Powers*, 465 F.Supp. at 846.

In contrast, a discussion of the secondary meaning of the initials DMI need never arise in the instant case. A plaintiff seeking to protect an unregistered mark bears the burden of proving that it has an exclusive right to use of the mark. *Keebler Co. v. Rovira Biscuit Corp.*, 624 F.2d

at 373. As discussed above, a dispute concerning exclusive rights to a mark will be resolved in favor of the party first using the mark. *United Drug Co. v. Rectanus*, 248 U.S. at 100, 39 S.Ct. at 51. Before proving a secondary meaning that will support its exclusive claim, a plaintiff must establish that its use of the contested mark preceded that of the defendant.

The facts before the Court in the instant case establish that Plaintiff's use of the DMI initials is junior in time to Defendant's use. Accordingly, the Court need not address the fact-based question of whether or not the initials DMI have established a secondary meaning in the marketplace. The Court is satisfied that the present record reflects Defendant's prior use of the contested initials. Since priority of use is necessary to establish an exclusive right to a mark, Plaintiff has failed to meet its burden of proving that it has an exclusive right protected by the Lanham Act. The Court therefore grants summary judgment in favor of Defendant on the Lanham Act claim.

### B. *State claims under statutory and common law*

As a threshold matter, the Court combines its analysis of Plaintiff's statutory claim under the Maine Deceptive Trade Practices Act, 10 M.R.S.A. section 1211, *et seq.*, with its analysis of the common law claim of unfair competition. The Maine Deceptive Trade Practices Act, which adopts the Uniform Deceptive Trade Practices Act of 1964, for the most part codifies the common law of unfair competition and deceptive trade practices. *Sebago Lake Camps, Inc. v. Simpson*, 434 A.2d 519, 521–22 (Me.1981). This is not to suggest that the Maine Act supplants or replaces the common law in this area. Rather, the Court merely indicates that the analysis required in this instance is the same.[1]

Similar common law principles apply to claims arising under Maine law as apply to

1. The Act "is designed to bring state laws up to date by removing undue restrictions on the common law action for deceptive trade practices." *Sebago Lake Camps, Inc. v. Simpson,* 434 A.2d at 521, *citing* 7A Uniform Laws Annotated

66 (1978). Except where the statutory provision and the common law conflict, however, the Act suggests no intent to replace the common law. *Id.* at 521.

cases under the federal Lanham Act. *See Sebago Lake Camps, Inc. v. Simpson,* 434 A.2d at 521. (evaluating secondary meaning of contested mark). Thus, the Court's analysis under the Lanham Act, above, applies with equal force here and need not be repeated in full. Plaintiff cannot meet the burden of proving that it is entitled to exclusive use of a mark without first showing that its use of the mark preceded Defendant's. As discussed *supra,* Defendant's use of the DMI initials predates Plaintiff's and therefore establishes a priority in use superior to Plaintiff's.

■ An additional argument of Plaintiff's that did not arise in the Court's Lanham Act analysis bears attention here. Plaintiff claims that Defendant has never established a common law right to use the DMI initials because immediately prior to Plaintiff's use, a third party had the exclusive right to use them. The third party, Data Management, Inc., registered a combined service/trade mark with the Secretary of State, filed on March 13, 1980, pursuant to 10 M.R.S.A. section 1522. Plaintiff claims that Data Management, Inc.'s registration of the mark precluded Defendant's lawful use of the initials DMI.

Further, Plaintiff has submitted to the Court a certified copy of a default judgment entered in the Maine Superior Court for Cumberland County dated January 26, 1987, in favor of Plaintiff, finding that the right to use the assumed name DMI had been abandoned by Data Management, Inc. for the purposes of 10 M.R.S.A. section 1527(1)(d)(1) and 10 M.R.S.A. section 1522(1)(F). Plaintiff has also submitted to the Court a certified copy of its own Statement of Intention to Do Business Under an Assumed Name, dated January 27, 1987, which it claims gives it an exclusive right to do business under the assumed name of DMI. Plaintiff claims that its right to exclusive use of the DMI initials picks up immediately where Data Management, Inc.'s right ended with the January 27, 1987 default judgment.

Thus, the crux of Plaintiff's argument is that Defendant has never had the lawful right to use the DMI initials. Plaintiff argues that Data Management, Inc.'s registration of the initials as a combined trade/service mark excluded Defendant's lawful use of the mark. Plaintiff argues further that its own filing of an intent to do business under the assumed name of DMI in compliance with 13–A M.R.S.A. section 307, immediately upon receiving the default judgment against Data Management, Inc., grants it an exclusive right to do business under the assumed name of DMI. Plaintiff therefore claims that Defendant's use of the DMI letters is not senior to that of Plaintiff.

The Court does not agree with Plaintiff's analysis. The statute under which Data Management, Inc. registered the mark in 1980 preserves the common law rule that use, and not registration, creates rights in a mark. 10 M.R.S.A. § 1532. In support of its claim that Data Management, Inc., and not Defendant, held the right to use the DMI initials, Plaintiff offers no proof, by affidavit or otherwise, concerning Data Management, Inc.'s actual use of the mark. Absent actual use, no rights can be acquired in a mark.

Even if Data Management, Inc. did use its registered mark, the only indication before the Court of the use Data Management, Inc. made of the mark is contained in its 1980 registration with the Secretary of State. In its registration application, Data Management, Inc. describes the goods and services it provides as "printed matter, office requisites, computer software services and products and ... advertising and business." Use of the mark in connection with these goods and services would not preclude Defendant from using the mark in its unrelated field of products and services in biomedical research. *See Triumph Hosiery Mills, Inc. v. Triumph International Corp.,* 187 F.Supp. 169, 171 (S.D.N.Y.1960) ("[t]he first user of the mark does not obtain the right to enjoin anyone else from using the same or similar mark in another field") (discussing Lanham Act).

■ Furthermore, Plaintiff does not have the right to contest Defendant's use of the DMI initials during the period in which the mark was registered to Data

Management, Inc. Unconsented use of a mark registered under Maine's trademark registration statute gives the *registration holder* the right to bring a civil action against the offending user. 10 M.R.S.A. § 1529. The right to protect its registered mark lay entirely with Data Management, Inc., who held the registration and thus the sole right to defend its registered mark in a civil action against Defendant. By claiming that Defendant's use of the DMI initials infringed upon Data Management, Inc.'s rights, Plaintiff is, in effect, claiming the right to defend a third-party holder's rights in a registered mark. Nothing in the statute suggests that Plaintiff has standing to defend Data Management, Inc.'s mark. 10 M.R.S.A. § 1521, *et seq.* Accordingly, the Court rejects this novel proposition.

Data Management, Inc. clearly had the sole right under 10 M.R.S.A. section 1529 to bring a civil action to oppose Defendant's use of the DMI initials during the period of its registration's validity. There is no indication that Data Management, Inc. brought such an action or even that it opposed Defendant's use. Absent the opposition of Data Management, Inc. during the period in which it held the registered mark, it cannot be said that Defendant's use during that period was likely to cause confusion or mistake, let alone constitute unlawful conduct. The worst that can be said is that Defendant's use of the DMI initials during this period was junior to Data Management, Inc.'s rights in the DMI mark.

■ Plaintiff also argues that it somehow acquired Data Management, Inc.'s superior right in the DMI mark by virtue of the default judgment in Plaintiff's favor. The facts before the Court do not support this argument. For Plaintiff to have acquired Data Management, Inc.'s rights would have required a recording of an assignment instrument with the Secretary of State's office pursuant to 10 M.R.S.A. section 1525. No such recording is reflected in the present record. The default judgment Plaintiff gained merely found that Data Management, Inc. had abandoned the rights held by virtue of its registering the mark in 1980. Indeed, the very fact that Data Management, Inc.'s rights were deemed abandoned supports Defendant's superior claim through use. Assuming that Defendant and Data Management, Inc. used the DMI initials contemporaneously, Data Management, Inc.'s abandonment before Plaintiff began its use would automatically give Defendant a claim senior in time to Plaintiff's.

■ Finally, Plaintiff claims that its filing of a statement of intent to do business under the assumed name of DMI, pursuant to 13–A M.R.S.A. section 307, gives it an exclusive right to the DMI mark. Once again, the Court does not agree with Plaintiff's claim. Plaintiff is correct in pointing out that the statute permits an action to enjoin the use of an assumed name if it is deceptively similar to a name in which Plaintiff has prior rights. The error in Plaintiff's claim, however, is that the mere filing of a statement of intent to do business under an assumed name "shall not constitute actual use of the assumed name ... for purposes of determining priority of rights." 13–A M.R.S.A. § 307(6). Therefore, Plaintiff's statement of intent does not allow its junior use of the DMI initials to leapfrog over the senior use established by Defendant. No priority of use accrues simply by the act of filing a statement of intent to do business under an assumed name.

## IV. CONCLUSION

The Court finds that no issue of material fact is in dispute and that Defendant is entitled to summary judgment on all counts as a matter of law. Accordingly, it is ORDERED that Defendant's motion for summary judgment be, and it is hereby, GRANTED. It is further ordered that Plaintiff's motion for preliminary injunction be, and it is hereby, DENIED.