**ROMM ART CREATIONS LTD. and London Contemporary Art, Plaintiffs,**

v.

**SIMCHA INTERNATIONAL, INC., Akin International Arts, Inc., H. Douglas Holland and Asher Wainer, Defendants.**

**No. CV 91–4126 (ADS).**

United States District Court, E.D. New York.

March 18, 1992.

Schneider, Harris, Harris & Furman, Woodmere, N.Y., Kenneth G. Rothstein, of counsel, for plaintiffs.

Amideo Nicholas Guzzone, Centereach, N.Y., for defendants.

## OPINION AND ORDER

SPATT, District Judge.

Contrary to the well-known adage that "imitation is the sincerest form of flattery," in the instant case, imitation has resulted in a charge of trade dress infringement against the defendants. This case involves a rarely-visited area of the law— the interaction of the Lanham Act with the marketing and sale of limited editions and fine art posters based upon the work of an Israeli artist named Tarkay.

The plaintiffs are in the business of publishing and distributing such art works. In this action, they seek to enjoin, among other things, the manufacturing and selling of certain limited editions and fine art posters of an artist-competitor named Patricia Govezensky.

The case is before the Court at this time to review the objections filed by the defendants and the plaintiffs' affidavit in response to the Report and Recommendation of the United States Magistrate Judge, who, after conducting an evidentiary hearing, recommended the issuance of a preliminary injunction.

## I. PRELIMINARY STATEMENT

The plaintiffs Romm Art Creations Ltd. ("Romm Art") and London Contemporary Art Limited ("Limited") move for a preliminary injunction, seeking to enjoin the defendants Simcha International, Inc. ("Simcha"), Akin International Arts Inc. ("Akin"), H. Douglas Holland and Asher Wainer, their officers, agents, servants, employees, attorneys and all persons acting in concert, participation or privity with them and their successors and assigns from manufacturing, selling, advertising, or offering for sale in any manner posters, silk screens or limited editions of reproductions of certain paintings bearing the signature "Patricia."

These posters, silk screens and limited editions are identified by stock numbers. The limited editions at issue are: Pat–001 ("Women in Blue"); Pat–002 ("Five O'Clock"); Pat–003 ("Sisters"); Pat–004 ("Chez Pierre"); Pat–006 ("Friendship"); Pat–016 ("Girls"); Pat–100 ("Cafe Royal"); Pat–101 ("Two Women"); Pat–102 ("On the Balcony"); Pat–103 ("Expectation"); Pat–104 ("Cafe de la Paix"); Pat–105 ("Cafe Mon Jardin"); and Pat–106 ("Thoughts"). The alleged infringing posters are identified as: Pat–500 ("Springtime"); Pat–501 ("Gossip"); Pat–502 ("Seated Gossip"); Pat–503 ("Cafe Torino") and Pat–504 ("A Quiet Afternoon").

Before the Court at this time is the Report and Recommendation of United States Magistrate Judge Michael L. Orenstein, in which he has recommended that the plain-

tiffs' motion for a preliminary injunction be granted in part and denied in part. Since the defendants' objections and the plaintiffs' response were timely filed, the Court now undertakes a *de novo* determination.

For the reasons set forth below, the Court confirms and adopts the Report and Recommendation of the Magistrate Judge in all respects and grants the plaintiffs' application for a preliminary injunction to the extent set forth below.

The following constitutes the Court's findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a) (*see also Weitzman v. Stein*, 897 F.2d 653, 658 [2d Cir.1990]).

## II. THE FACTS

The Court recites only those facts relevant to the application for a preliminary injunction.

Plaintiff Romm Art Creations, Ltd. is a corporation organized under the laws of the State of New York and maintains offices in Glen Cove, New York. Plaintiff London Contemporary Art Ltd. is a corporation organized under the laws of Great Britain and maintains its offices in London, England. For several years prior to this suit, Romm Art has been engaged in the business of publishing and selling, on a wholesale basis, both fine art posters and limited edition paintings and sculptures. London is also engaged in the publication and sale of limited editions.

Romm Art was licensed by Givon Prints, an Israeli corporation, to be the exclusive world-wide distributor of Tarkay posters. Itzchak Tarkay is an Israeli artist of international renown. His works have been shown in Israel, the United States and various European countries. Tarkay gave to Givon Prints exclusive rights to reproduce various original art work as posters and/or limited editions. Givon, in turn, licensed Romm Art, whose customers include small poster shops, frame shops, art galleries, chain stores and distributors [1] (RR at p. 2).

Each of the limited editions and posters noted above is a reproduction of an original work from the artist's collection known as "Women and Cafes." According to the plaintiffs, the "Women and Cafes" series, as a result of widespread distribution and advertising, has "become recognized by the trade and by consumers as 'Tarkays'" (Complaint, ¶ 17). According to Piers Johnston, a principal of plaintiff London, Tarkay is the best selling of the thirty artists that London represents (Tr. 157, 171).

Steven Romm, an officer of Romm Art, designed the layout for four Tarkay posters (RR at p. 5). One of the issues at stake in this lawsuit deals with the distinctive border arrangements of those Tarkay posters. In contrast to other artists who were normally required to produce images in conventional sizes with standard two inch borders, Tarkay's works necessitated an alternative layout—with a single margin on either the side or the bottom of the image.

Romm Art, in its efforts to promote the Tarkay works, produced a "tear sheet," displaying the posters in miniature form, in a vertical format, with the Tarkay name in red letters on top (*see* Plaintiffs' Exhibit QQ). The tear sheets are also a part of this lawsuit.

The defendant Simcha International, Inc. ("Simcha") maintains an office in Powder Springs, Georgia. Simcha buys and sells original works of art, limited editions and posters (RR at p. 3). The defendant Asher Wainer ("Wainer") is president and sole owner of Simcha, which is the distributor of the Patricia Govezensky limited editions and posters—the "Patricia" line at issue in this case.

Wainer was also the general manager of the defendant, Akin International Arts, Inc., the alleged predecessor corporation to Simcha. Although Akin is purportedly no longer in business, Wainer has continued to use the Akin logo as well as an Akin envelope after the supposed dissolution. The defendant H. Douglas Holland is "an officer, employee and or servant" of Akin and

1. "RR at p. ——" refers to the pages of the Report and Recommendation of the Magistrate Judge, dated January 9, 1991.

Simcha (RR at p. 3; Defendants' Amended Answer, ¶ 6).

The plaintiffs filed their complaint on October 23, 1991, alleging the following causes of action: (1) trade dress infringement under the Lanham Act; (2) dilution of the Tarkay trade dress in violation of New York General Business Law § 368–d and the common law of New York; and (3) unfair competition and deceptive acts and trade practices in violation of New York General Business Law § 349. Romm Art alleges that the defendants' manufacture and sale of its reproductions of the Tarkay works and marks were for the "willful and calculated purpose of trading upon plaintiffs' goodwill" and "the secondary meaning created by Tarkay's unique and distinctive style and appearance" (Complaint, ¶¶ 37–38). The plaintiffs further charge that:

> "23. The series of 'Patricia' paintings defendants have caused to be created are slavishly similar and entirely derivative of the works of Tarkay, and, more particularly, upon Tarkay's 'Women and Cafes' collection.

> \* \* \* \* \* \*

> 25. The 'Patricia' works are slavish imitations of Tarkay's artworks, prepared with the intention of causing potential customers and purchasers to confuse them with the already established and immensely popular 'Women and Cafes' works of Tarkay.

> \* \* \* \* \* \*

> 28. Simcha offers Patricia reproductions at prices lower than prices sought by Romm and London for reproductions of Tarkay's art works.
> 29. The publication of and advertising for the said Patricia reproductions has [sic] caused widespread consumer confusion due to the conscious and intentional similarity of the two bodies of work.
> 30. In advertising distributed by Simcha, Simcha has falsely and fraudulently represented itself to potential customers as a distributor of Tarkay works."

In their Answer, the defendants asserted the following affirmative defenses: (1) the "Patricia" paintings are not derivative of Tarkay's works and there is no likelihood of confusion among customers as to their sources; (2) much of "Patricia's" artworks pre-date the artworks of "Tarkay"; (3) the complaint fails to state a cause of action under Section 43(a) of the Lanham Act; (4) the "Tarkay" name has not acquired the properties of a mark nor secondary meaning; (5) the complaint fails to state a cause of action under New York General Business Law § 368–d or the common law; (6) the complaint fails to state a cause of action under New York General Business Law § 349; (7) the action is barred by the doctrine of laches; and (8) failure to join Patricia Govezensky, Moshe Leiter and Yossi Art Gallery as necessary and indispensable parties.

### III. PROCEDURAL SETTING

The motion for a preliminary injunction was brought on by order to show cause, signed by this Court on October 24, 1991. Pursuant to 28 U.S.C. § 636(b)(1), the matter was referred to the United States Magistrate Judge, to conduct an evidentiary hearing and to issue a Report and Recommendation. The Magistrate Judge conducted a hearing which began on November 20, 1991, and continued over three days.

On January 9, 1991, the Magistrate Judge issued his Report and Recommendation, finding that: (1) the plaintiffs had properly commenced their suit under 15 U.S.C. § 1125(a), notwithstanding the lack of a copyright infringement claim; (2) the Tarkay works were produced in limited edition form prior to the allegedly similar limited editions of Patricia; (3) Romm Art's Tarkay posters and London's Tarkay limited editions have acquired secondary meaning; (4) the plaintiffs sustained their burden of establishing "likelihood of confusion" based on an analysis of the *Polaroid* factors; and (5) the plaintiffs would be irreparably harmed by the defendants' continued sales of Patricia posters.

The Magistrate Judge recommended that the defendants be enjoined from any sales-related activities in relation to Pat–103 through Pat–106, Pat–500 through Pat–504

and the Patricia tear sheet. He did not advocate enjoining sales-related activities associated with Pat–001 through Pat–004, Pat–006, Pat 016, Pat–101 and Pat 102.

With respect to Pat–100 ("Cafe Royal"), the Magistrate Judge found no confusing similarity to the Tarkay "Women and Cafe" series. The Magistrate Judge further recommended that the plaintiffs be required to post an undertaking in the amount of $20,000 as security. In light of these determinations, the Magistrate Judge found it unnecessary to address the plaintiffs' pendent state law claims.

The defendants thereafter filed timely objections to the Report and Recommendation on January 17, 1992. Essentially, Simcha contends that the plaintiffs failed to present sufficient evidence to sustain the drastic remedy of a preliminary injunction. Simcha argues that there was insufficient documentation that the plaintiffs will be caused irreparable harm, specifically "proof of loss [or] diminution or [sic] business," nor any showing of "hardship that could not be compensated by monetary damages" (Defendants' Objections at p. 2).

*According to the defendants,*

"the plaintiffs offered no substantive documentary proof that Tarkay created and published the works ultimately converted into posters by ROMM ART CREATIONS LTD. *prior to the creation and publication of the works of the artist, Patricia,* and publication and distribution by the defendants of the posters of the same. The essential issue of plaintiffs' claim, that Tarkay developed the contested style prior to Patricia, was supported solely by the recollection of plaintiffs' witnesses—recollection which was not based upon any documentary proof or other recorded evidence. As the publications of the posters of Tarkay and Patricia clearly occurred over a very short span of time, actual documentary proof providing the exact dates must be presented by the plaintiffs before as drastic a remedy as a preliminary injunction can be issued" (id. at pp. 2–3) (emphasis supplied).

Other than an unsigned document dated April 30, 1991, the defendants allege that no proof of an actual exclusive distribution agreement between the plaintiffs and Givon Prints was produced. They further charge that all of the plaintiffs' witnesses were biased because all are dealers or associates of the plaintiffs who offered only speculative testimony.

Finally, the defendants claim that they were unfairly disadvantaged in having only 20 days to prepare for the hearing.

In response, counsel for the plaintiffs observes that the defendants have not disputed the fact that the Tarkay works are entitled to protection under the Lanham Act. He emphasizes that much of the evidence establishing the relevant dates of entry into the marketplace of the respective artworks came from the defendant, Asher Wainer.

. The Court finds it significant that the defendants did not cite one controlling authority for any of the arguments set forth in their objections.

## IV. THE APPLICABLE LAW

Before turning to the merits of the application, at the outset, the Court examines the applicable standards in reviewing the Report and Recommendation of the Magistrate Judge and with regard to the motion for a preliminary injunction.

### A. *Review of the Report and Recommendation of the Magistrate Judge*

 Pursuant to 28 U.S.C. § 636(b)(1), any party may file written objections to the Report and Recommendation of the Magistrate Judge within ten days after being served with a copy (*see also* Fed.R.Civ.P. 72[a]). Failure to object results in a waiver (*see Small v. Secretary of Health and Human Servs.,* 892 F.2d 15, 16 [2d Cir. 1989] [per curiam]). Once objections are filed, however, the district court is required to make a *de novo* determination as to those portions of the Report and Recommendation to which objections were made (*see* 28 U.S.C. § 636[b][1]; *Grassia v. Scully,* 892 F.2d 16, 19 [2d Cir.1989]). Although the district court may "receive fur-

ther evidence or recommit the matter to the magistrate with instructions" (28 U.S.C. § 636[b][1]), a *de novo* determination does not require the recalling of witnesses (*see United States v. Raddatz*, 447 U.S. 667, 676, 100 S.Ct. 2406, 2412, 65 L.Ed.2d 424 [1980]). Rather, in making such a determination, the district court may, in its discretion, review the record and hear oral argument on the matter (*see Pan Am. World Airways, Inc. v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 894 F.2d 36, 40 n. 3 [2d Cir.1990]).

Accordingly, in the instant case, the Court bases this *de novo* determination upon the record below, the submissions by the parties, and the objections filed in response to the Report and Recommendation of the United States Magistrate Judge.

**B. *Standard for the Issuance of a Preliminary Injunction:***

In order to obtain a preliminary injunction in the Second Circuit, it is well established that the movant must "clearly" establish the required elements set forth in the familiar recitation of the rule as follows:

> "a party seeking a preliminary injunction in this circuit must establish both possible irreparable harm and either (1) a likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor."

*Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979) (per curiam); *see Warner Bros. v. Gay Toys, Inc.*, 658 F.2d 76, 78–79 (2d Cir.1981) [*Jackson Dairy* standard applies in trademark infringement cases]; *see also Western Publishing Co. v. Rose Art Indus., Inc.*, 910 F.2d 57, 59 (2d Cir.1990); *LeSportsac, Inc. v. K Mart Corp.*, 754 F.2d 71, 74 (2d Cir.1985).

■ A showing of probable irreparable harm is usually considered the single most important requirement (*see Reuters Ltd. v. United Press International, Inc.*, 903 F.2d 904, 907 [2d Cir.1990] [citations omitted]), and an applicant must establish more than a mere "possibility" of irreparable harm, namely, "that it is *likely* to suffer irreparable harm if equitable relief is denied" (*JSG Trading Corp. v. Tray–Wrap, Inc.*, 917 F.2d 75, 79 [2d Cir.1990]).

■ As to the "likelihood of success" element, the movant "need not show that success is an absolute certainty. He need only make a showing that the probability of his prevailing is better than fifty percent" (*Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025 [2d Cir.1985]).

■ However, in the particular area of trademark infringement, "[a]ssuming that a particular mark warrants protection under the Lanham Act, the requisite likelihood of success on the merits and irreparable harm can both be established by showing a 'likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or ... simply confused, as to the source of the goods in question'" (*Western Publishing Co. v. Rose Art Indus., Inc., supra*, 910 F.2d at p. 59 [citations omitted]).

■ The issuance of a preliminary injunction, of course, is considered an extraordinary equitable remedy, hence the requirement that entitlement be "clearly" shown (*see Berrigan v. Norton*, 451 F.2d 790, 793 [2d Cir.1971]; *see also* 11 C. Wright & A. Miller, *Federal Practice & Procedure* § 2948 [1973 & Supp.1990] [collecting cases]).

With these basic principles in mind, the Court now turns to the merits of the application for a preliminary injunction.

**C. *Lanham Act:***

**i. *Generally.***

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), provides a statutory remedy for trademark or trade dress infringement and unfair competition to a party injured by a competitor's false designation of origin of its product, whether or not the aggrieved party has a registered trademark (*LeSportsac, Inc. v. K Mart Corp.*,

*supra*, 754 F.2d at p. 75). Section 43(a) provides an additional remedy for the false or misleading or deceptive advertisement of facts. In short, the Lanham Act provides civil redress to one damaged by unfair competition through false or misleading advertising and/or trademark or trade dress infringement (*see generally* Bauer, *A Federal Law of Unfair Competition: What should be the Reach of Section 43(a) of the Lanham Act?*, 31 UCLA L.Rev. 671, 685–703 [1984] [broad overview of scope and limitations of Lanham Act] ). Section 43(a), as amended, provides in relevant part as follows:

> "(a) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any ... false or misleading description of fact, or false or misleading representation of fact, which—
>
> > (1) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
> >
> > (2) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities ... of his ... goods, services or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act."

15 U.S.C. § 1125(a).

In order to succeed in this action, the plaintiffs must show that (1) the Tarkay trade dress has acquired secondary meaning, and (2) there is a likelihood of confusion as to the source of the product.

### ii. *Trademark Infringement: Works of Aesthetic Art*

■ Having reviewed the record below, the Report and Recommendation of the Magistrate Judge, the Objections submitted by the defendants, and the plaintiff's Affidavit in Response, the Court finds

that this suit falls within a rarely-tread area of the law, namely, the application of trade dress protection to works of art. Initially, the Court notes that the defendants have raised no objection to the Magistrate Judge's finding that 15 U.S.C. § 1125(a) provides relief for a claim of infringement of the trade dress of commercial reproductions of particular art works (RR at p. 13).

Courts have long recognized that recovery under § 43(a) is not restricted to federally registered trademarks, but extends to "words, *symbols, collections of colors and designs,* or advertising materials or techniques" that the purchasing public has come to associate with a single source (*RJR Foods, Inc. v. White Rock Corp.*, 603 F.2d 1058, 1059 [2d Cir.1979]; *see also Perfect Fit Industries, Inc. v. Acme Quilting Co.*, 618 F.2d 950 [2d Cir.1980] ) (emphasis supplied).

To prevail on a trade dress infringement claim and prove unprivileged imitation— and ultimately to prevent copying of the appearance of a product—a plaintiff must establish that: "(1) the trade dress, whether a single feature or a combination of features, must be non-functional; (2) the trade dress must have acquired a secondary meaning; and (3) there must be a likelihood of confusion among consumers as to the source of the competing products" (*Hartford House, Ltd. v. Hallmark Cards, Inc.*, 846 F.2d 1268 [10th Cir.1988], *quoting Brunswick Corp. v. Spirit Reel Co.*, 832 F.2d 513, 517 [10th Cir.1987] ).

This Court finds most persuasive the decision in *Hartford House Ltd. v. Hallmark Cards Inc.*, 647 F.Supp. 1533 (D.Colo.1986), *aff'd*, 846 F.2d 1268 (10th Cir.), *cert. denied*, 488 U.S. 908, 109 S.Ct. 260, 102 L.Ed.2d 248 (1988). In *Hartford House*, a small commercial manufacturer of "non-occasion" greeting cards which conveyed emotional messages about personal relationships brought suit against Hallmark, alleging that its "Personal Touch" line of cards infringed the plaintiff's product. In finding that the Lanham Act was applicable in this type of situation, the district court stated the following:

"[o]ne salutary purpose of the Lanham Act in this context is to protect a creative artists' rights in his or her creation and thus provide incentive to be creative. By protecting and fostering creativity, a product with features different and perhaps preferable to the Blue Mountain product may well be developed. Offering consumers a choice in the non-occasion greeting card market stimulates, rather than stifles competition" (*Hartford House*, 647 F.Supp. at p. 1540).

On appeal, the Tenth Circuit held that the district court was correct in determining preliminarily that the combination of the features comprising the trade dress (i.e., the overall appearance or look of Blue Mountain's "AireBrush Feelings" and "WaterColor Feelings" cards) is not functional and was thus protectable under § 43(a) of the Lanham Act (*Hartford House, Ltd. v. Hallmark Cards, Inc.*, 846 F.2d 1268, 1275 [10th Cir.1988], *cert. denied*, 488 U.S. 908, 109 S.Ct. 260, 102 L.Ed.2d 248 [1988]).

In light of the foregoing, as well as the holdings in *Harlequin Enterprises Ltd. v. Gulf & Western Corp.*, 644 F.2d 946 (2d Cir.1981) (affirming preliminary injunction under § 1125[a] where overall features of book cover design of "Silhouette Romance" found likely to cause confusion with cover design of "Harlequin Presents" books) and *Hughes v. Design Look Inc.*, 693 F.Supp. 1500 (S.D.N.Y.1988) (section 1125[a] applicable in case of fine art poster calendar), the Court concurs in and adopts the finding of the Magistrate Judge that the Tarkay posters and limited editions are entitled to protection under § 1125(a) of the Lanham Act.

### iii. *Trademark Infringement: Entry into the Market*

■ The Magistrate Judge was faced with the complex task of discerning which artist originated the overall look of "Women and Cafes." In fulfilling that task, the Magistrate Judge reviewed both testimony and documentary evidence.

The plaintiff distributors of art work must establish that Tarkay has the exclusive right to use the "Women and Cafes"

look as a designation of origin, noting that the plaintiffs bear the burden of proof regarding Tarkay's right to use this unregistered mark (*see Walt–West Enterprises, Inc. v. Gannett Co., Inc.*, 695 F.2d 1050, 1058 [7th Cir.1982]; *Keebler Co. v. Rovira Biscuit Corp.*, 624 F.2d 366, 373 [1st Cir. 1980]; *Diagnostic Marketing Intern., Inc. v. Diamed, Inc.*, 707 F.Supp. 50, 54 [D.Me. 1989]).

Having reviewed the hearing testimony as well as the exhibits submitted by both the plaintiffs and defendants, the Court finds especially useful the chronological chart of Tarkay works assembled by the Magistrate Judge (RR at p. 14). The chart reflects the testimony of several witnesses as well as information gleaned from *defendants'* Exhibit 15—a "Retail Price List for original graphics by I. Tarkay," ranging from $230 to $700. The price list is dated "February 1990" and the image numbers assigned to each work mirror the chronology of publication. From all of the evidence, it is clear that Tarkay's works had "entered the market" at least by early February of 1989.

Of all the witnesses testifying for both sides, the earliest date of a clearly recalled "entry into the market" for the Patricia (Patricia Govezensky) works was pinpointed by Asher Wainer. Defendant Wainer testified to the following fact:

[Atty Guzzone:] "Let's start with the first show that you did according to your statement, at the time you did the first show, when was that?

[Wainer:] It was in New York in Galleria. As far as I recall again, it was about the same date I have there.

[Atty Guzzone:] March of 1990?

[Wainer:] March of 1990.

[Atty Guzzone:] At that time, were you showing Patricias?

[Wainer:] Yes, sir, originals.

[Atty Guzzone:] And your next show?

[Wainer:] The next show after that, as far as I can recall, was Chicago in May of 1990.

[Atty Guzzone:] And at that time, were you showing Patricias?

[Wainer:] Yes, among other artists" (Tr. 344).

Piers Johnston, a principal of plaintiff London, and Steven Romm, a principal of plaintiff Romm Art testified to first being aware of the Patricia posters during the April 1991 Art Expo in New York (Tr. 157, 221). The plaintiffs' expert, Harriet Rinehart, an art appraiser and publisher of fine art posters, testified that although she did not know the exact date of the printing of the Patricia posters, she did know that the Tarkay posters were marketed before the Patricias (Tr. 84–85).

Rose Mary Uffner, owner and operator of the Loren Gallery in Cedarhurst, was called as a rebuttal witness and testified that she first became familiar with Tarkay in either 1986 or 1987 and that her Gallery had given a show for Tarkay in 1989 (Tr. 418–419). The witness identified a Tarkay limited edition that had been sold at the 1989 show (Tr. 425).

In light of the foregoing, the Court finds that the plaintiffs presented sufficient documentation to support their claim that Tarkay's works entered the market prior to those of Patricia. The Court therefore concurs in and adopts the findings of the Magistrate Judge that the Tarkay works which are the subject of this lawsuit were produced in limited edition form prior to the allegedly infringing limited editions of Patricia (RR at p. 18).

### iii. *Trade Dress Infringement: Secondary Meaning*

The Magistrate Judge found that the Tarkay mark met the criteria for an arbitrary or fanciful mark because it identifies the origin of the item (RR at p. 18). The Court confirms and adopts that finding.

■ Arbitrary or fanciful marks are eligible for protection without proof of secondary meaning (*see McGregor–Doniger v. Drizzle Inc.*, 599 F.2d 1126 [2d Cir.1979]; *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9–11 [2d Cir. 1976]). The degree of protection afforded under the Lanham Act is largely determined by the distinctiveness of the trade dress (*see Hartford House Ltd. v. Hall-*

*mark Cards Inc.*, *supra*, 647 F.Supp. at p. 1541). An inherently distinctive trade dress *is* proof of secondary meaning (*see McGregor–Doniger v. Drizzle Inc.*, *supra*, 599 F.2d at 1132; *Hartford House Ltd. v. Hallmark Cards Inc.*, *supra*, 846 F.2d at 1271; *Beer Nuts, Inc. v. Clover Club Foods Co.*, 711 F.2d 934 [10th Cir.1983]).

■ Once the plaintiff has established that the trade dress has acquired secondary meaning in the marketplace, the burden shifts to the defendant to show that the trade dress sought to be protected is "functional," and therefore is not covered under section 43(a) of the Lanham Act (*see LeSportsac, Inc v. K Mart Corp.*, *supra*, 754 F.2d at p. 76). A combination of visual features that creates a distinctive visual impression is not functional and is protectable (*see Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 841 [9th Cir. 1987]). The Court determines that the Tarkay posters and limited editions create just such a distinctive visual impression. Therefore, the Court finds that the Tarkay trade dress is not functional and is protected under the Lanham Act.

Having determined that the plaintiffs have a protectable interest in the Tarkay trade dress, the Court now considers the question of whether the defendants have infringed upon that right.

### iv. *Trade Dress Infringement: "Likelihood of Confusion"*

■ Even though the plaintiff has established secondary meaning as to the source and is not defeated by the functionality defense, the plaintiff must also substantiate the second prong of "likelihood of confusion," which is a demonstration of "a likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question" (*Hasbro, Inc. v. Lanard Toys, Ltd.*, 858 F.2d 70, 75 [2d Cir.1988], *quoting Mushroom Makers, Inc. v. R.G. Barry Corp.*, 580 F.2d 44, 47 [2d Cir.1978], *cert. denied*, 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 [1979]).

In assessing the likelihood of confusion, the Court must consider the 8 factors set forth in *Polaroid Corp. v. Polarad Elec-*

*tronics Corp.,* 287 F.2d 492, 495 (2d Cir.), *cert. denied,* 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961). Each specific finding of the Magistrate Judge is "subject to a clearly erroneous standard, but the ultimate determination of the likelihood of confusion is a legal issue subject to *de novo* [appellate] review" (*Hasbro, Inc. v. Lanard Toys, Ltd., supra,* at pp. 75–76, *citing Banff, Ltd. v. Federated Dept. Stores, Inc.,* 841 F.2d 486, 490 [2nd Cir.1988]). The Court now turns to this critical *Polaroid* analysis.

"The *Polaroid* Factors"

▇ "The [Polaroid] factors are designed to help grapple with the 'vexing' problem of resolving the likelihood of confusion issue" (*Polaroid Corp. v. Polarad Electronics Corp.,* 287 F.2d 492, 495 [2d Cir.], *cert. denied,* 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 [1961]). Consequently, each factor is to be evaluated in the overall context of its impact on the essential question of likelihood of confusion. At the outset, however, the Court takes note of the fact that competing goods require less proof under the *Polaroid* factors than noncompetitive items in establishing likelihood of confusion (*Banff, Ltd. v. Federated Dept. Stores, Inc.,* 841 F.2d 486, 492 [2d Cir.1988]; *see Plus Products v. Plus Discount Foods, Inc.,* 722 F.2d 999, 1008–09 [2d Cir.1983]).

(1) *Strength of the Senior User's Mark:*

▇ Strength of a mark has been defined as "its tendency to identify the goods sold under the mark as emanating from a particular … source" (*McGregor–Doniger Inc. v. Drizzle Inc.,* 599 F.2d 1126, 1131 [2d Cir.1979]).

Having categorized the Tarkay trade dress as "arbitrary or fanciful," the Court concurs in and adopts the Magistrate Judge's finding that as imaginative, artistic portraits, the Tarkay images are strong marks. Other than aesthetic gratification, these images serve no other purpose than to identify their source/creator. This view is enhanced by the testimony of the plaintiffs' expert who stated that the Tarkay is considered to be one of two of "the best

selling artists in the poster market in the world" (Tr. 138).

The Court therefore holds that the Tarkay trade dress is a strong mark warranting protection under the trademark laws.

(2) *Degree of Similarity Between The Two Marks:*

▇ In determining similarity, "it is the combination of features as a whole rather than a difference in some of the details which must determine whether the competing product is likely to cause confusion in the mind of the public" (*Harlequin Enters., Ltd. v. Gulf & Western Corp.,* 644 F.2d 946 [2d Cir.1981]).

Having examined the color patterns and shading of the Tarkay works, the placement of figures in each of the pictures examined, the physical attributes of his women, the depiction of women sitting and reclining, their characteristic clothing vis-a-vis those portrayed by Patricia, the Court concludes that there is "sufficient similarity between the products to scrutinize the evidence for proof of confusion" (RR at p. 25).

Nowhere in the objections do the defendants specifically challenge the Magistrate Judge's finding of "sufficient similarity" under this particular *Polaroid* factor. The test for determining similarity is whether the labels create the "same overall impression" when viewed separately (*Paco Rabanne Parfums, S.A. v. Norco Enters., Inc.,* 680 F.2d 891, 893 [2d Cir.1982], *quoting RJR Foods, Inc. v. White Rock Corp.,* 603 F.2d 1058, 1060 [2d Cir.1979]).

In light of the fact that the Tarkay and Patricia patterns are not dictated by function, and that a variety of patterns is possible, the similarity of the patterns is striking. When this striking similarity is factored into the likelihood of confusion analysis, in light of the strength of the Tarkay trade dress, consumer confusion is a likely result (*see Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.,* 799 F.2d 867, 873 [2 Cir.1986]). The Court holds, therefore, that the trade dresses of Tarkay and Patricia create the "same overall impression" when viewed separately

**1138**

(*Paco Rabanne Parfums, S.A. v. Norco Enters., Inc., supra*).

The Court finds the testimony of the defendants' expert, Dr. Robert Myron, to be significant on this point. Dr. Myron is chairman of the Art History Department at Hofstra University. Although Dr. Myron testified that the two trade dresses were dissimilar, he acknowledged that his ability to observe such dissimilarities was heightened by his expertise in art history (Tr. 258). After initially indicating that he found no basis for likelihood of confusion among any particular segment of the purchasing public, Dr. Myron subsequently acknowledged that the level of sophistication of buyers of fine art posters was significantly different from that of art collectors (Tr. 259–261). The general public's confusion is only increased when the name of the artist is eliminated or covered up in the matting and/or cropping process.

Having assessed the similarity of the marks under the *Polaroid* standard, the Court finds that the trade dresses are similar—the general impression conveyed to the public by these images does not differ significantly, and the similarities create an issue of fact on the likelihood of consumer confusion. The Court therefore finds the second factor of "similarity" in the plaintiffs' favor.

### (3) *Competitive Proximity of the Two Products:*

▪ Where the two products are in direct competition with each other, the likelihood of confusion increases (*Lambda Elecs. v. Lambda Technology, Inc.*, 515 F.Supp. 915, 926 [S.D.N.Y.1981]). In the instant case, the same galleries carry and sell works by both Tarkay and Patricia. This fact was manifest in the statements of Steven Romm who testified that the works of both artists were exhibited at the 1991 Los Angeles Artexpo and who noted that the Artexpo catalog displayed the works of both artists as well as information about the plaintiffs and defendants as distributors of those works.

"Such grouping in galleries and advertising materials favors a finding of likelihood of confusion" (RR at p. 26, *citing Charles*

of the *Ritz Group v. Quality King Distrib.*, 832 F.2d 1317, 1322 [2d Cir.1987]). Given this proximity, differences in methods of display do not eliminate "the likelihood that customers may be confused as to the source of the products, rather than as to the products themselves" (*McGregor–Doniger Inc. v. Drizzle Inc., supra*, 599 F.2d at p. 1134). The Court therefore adopts the Magistrate Judge's finding that this close proximity between the images favors likelihood of confusion (RR at p. 27).

### (4) *Likelihood Plaintiff Will "Bridge the Gap":*

This factor is normally addressed when the products being reviewed are not in direct competition with each other, and the question arises "is the plaintiff likely to enter this market?" Here, there is direction competition between Tarkay and Patricia, eliminating the need to consider this factor.

### (5) *Evidence of Actual Confusion:*

▪ "Evidence of actual confusion is a strong indication that there is a likelihood of confusion" (*Toys "R" Us, Inc. v. Canarsie Kiddie Shop, Inc.*, 559 F.Supp. 1189, 1198 [E.D.N.Y.1983]). The Court finds sufficient evidence of actual confusion based upon the following facts presented during the hearing: (1) Steven Romm's testimony regarding immediate concerns expressed by attendees at the Artexpo as well as by subsequent callers; (2) contact from Gallery owners such as Harriet Rinehart (Tr. 62); (3) the testimony of defendants' expert Dr. Myron that there were only "slight differences" in the styles and print of the two artists and that the works were "quite similar in general appearances" (Tr. 265); (4) Dr. Myron's enumeration of similar features, such as the use of two figures, the hats worn by the women, the patterned dresses, the background colors and the appearance of flora in each; and (5) the feedback from specific gallery owners distressed by the exact likenesses they perceived in Patricia. Consequently, the Court finds that this factor favors the plaintiffs.

**(6)** *Junior User's Good Faith:*

The Court turns now to the junior user's state of mind—i.e., whether he was aware of the plaintiff's mark when adopting his own. This consideration is relevant in determining likelihood of confusion as well as in balancing the equities (*Centaur Communications v. A/S/M Communications,* 830 F.2d 1217, 1227–28 [2d Cir.1987]; *Tripledge Products, Inc. v. Whitney Resources, Ltd.,* 735 F.Supp. 1154, 1162 [E.D.N.Y.1990]).

In reviewing the exhibits, depositions, and testimony of the fact and expert witnesses on both sides, the Magistrate Judge noted that "the court is disturbed with the similarity between Tarkay's 'On The Stage' and Patricia's 'Seated Women' ... lead[ing] the court to believe that at trial there might well be sufficiently serious questions going to the merits regarding the issue of good faith" (RR at p. 32).

■ This "good faith" factor "looks to whether the defendant adopted its mark with the intention of capitalizing on the plaintiff's reputation and goodwill and any confusion between his and the senior user's product" (*Edison Brothers Stores, Inc. v. Cosmair, Inc.,* 651 F.Supp. 1547, 1560 [S.D.N.Y.1987], *quoted in Doe Lang v. Retirement Living Publishing Co., Inc.,* 949 F.2d 576, 581 [2d Cir.1991]).

■ Once the plaintiff has introduced evidence which, taken cumulatively, allows an inference of intentional copying, the burden of proof on the element of good faith is on the defendant. The defendants offered no such affirmative defense at the hearing nor have they raised any such argument in their objections. In fact, the testimony of Dr. Myron, commenting on the two works noted above, clearly reflects his opinion that one artist copied from the other (Tr. 267). The defendants did not refute this testimony.

The Second Circuit has held that evidence of intentional copying raises a presumption that the "second comer intended to create a confusing similarity" (*Charles of the Ritz Group v. Quality King Distrib.,* 832 F.2d 1317, 1322 [2d Cir.1987], citing *Mobil Oil Corp. v. Pegasus Petroleum Corp.,* 818 F.2d 254, 258 [2d Cir.1987]; *Perfect Fit Industries v. Acme Quilting Co.,* 618 F.2d 950, 954 [2d Cir.1980] [citations omitted]). Although this factor alone is not dispositive, it bolsters a finding of consumer confusion (*Charles of the Ritz Group v. Quality King Distrib., supra,* at p. 1322; *Centaur Communications, Ltd. v. A/S/M Communications, Inc., supra,* 830 F.2d at p. 1227).

The Court finds the above evidence to be substantial on the issue of intentional copying. By failing to raise any reasonable defense to this inference, the defendants leave this Court with the strong perception that they have acted in bad faith. Consequently, the Court finds in favor of the plaintiffs on this factor of the "junior user's good faith."

**(7)** *Quality of the Junior User's Product:*

■ "If the quality of the junior user's product is of a low quality, the senior user's interest in avoiding any confusion is heightened" (*Toys "R" Us, Inc. v. Canarsie Kiddie Shop, Inc., supra,* 559 F.Supp. at p. 1199). The Court finds the works of Tarkay and Patricia to be of very similar quality.

However, the lack of marked difference in quality between goods supports the inference that they emanate from the same source (*Centaur Communications v. A/S/M Communications, supra,* 830 F.2d at p. 1228; *see also Lois Sportswear, U.S.A. v. Levi Strauss & Co., supra,* 799 F.2d at p. 875). A senior user may sue to protect his reputation even where the infringer's goods are of top quality (*see Mobil Oil Corp. v. Pegasus Petroleum Corp., supra,* 818 F.2d at 260; *Wesley–Jessen Div. of Schering Corp. v. Bausch & Lomb Inc.,* 698 F.2d 862, 867 [7th Cir.1983]).

Upon review of the testimony and relevant case law, the Court finds that this factor neither helps nor hinders the plaintiffs' case.

**(8)** *Sophistication of the Purchasers*

■ The focus of this particular factor is whether consumers spend much time evaluating the product before making a

purchase or whether it is considered a "grab off the shelf" product (*Goya Foods, Inc. v. Condal Distribs., Inc.*, 732 F.Supp. 453, 457 [S.D.N.Y.1990]).

According to Harriet Rinehart's testimony, "the average consumer, who is going into poster and commercial art galleries is not an educated customer. They are looking for the colors that they like, and they see an artist and they say this is a great look" (Tr. 67). On the basis of (1) the testimony of Ms. Rinehart and Dr. Myron about the level of consumer sophistication, (2) the testimony of Steven Romm concerning the average selling price of the respective posters, and (3) the defendants' price list reflecting an average price of thirty dollars for a poster, the Court finds that the inexpensive price per poster only adds to the likelihood of consumer confusion.

The Court is convinced that an ordinary buyer of fine art posters would not recognize the disparities. Therefore, the Court finds the evidence of "sophistication of the buyer" as support for a finding of likelihood of confusion to favor the plaintiffs.

## V. ASSESSMENT OF THE "POLAROID" FACTORS

The determination of whether a likelihood of confusion has been established is a complex one, for there clearly are factors cutting both ways (*see*, for example, *Toys R Us, Inc. v. Canarsie Kiddie Shop, Inc., supra*, 559 F.Supp. at p. 1200). However, the evidence, taken cumulatively, does allow an inference that there is some actual confusion as to source in the marketplace caused by the similarity of the competing trade dresses, and the Court draws such an inference (*Hartford House, Ltd. v. Hallmark Cards, Inc., supra*, 846 F.2d at p. 1274–75).

The Court finds, after considering all of the *Polaroid* factors, that the defendants' trade dress does create a likelihood of confusion for an appreciable number of consumers. In reaching this decision, the Court places primary importance on the strength of the Tarkay trade dress, the similarity of the two trade dresses, the directly competitive nature of the products

offered, the inference of intentional copying by the defendants, and the lack of "deliberate and measured product selection by consumers" in a gallery or poster shop (*see Polaroid Corp. v. Polarad Electronics Corp., supra*, 287 F.2d 492 [2d Cir.], *cert. denied*, 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 [1961].

Accordingly, the Court grants the plaintiff's motion for a preliminary injunction based upon the foregoing violations of the Lanham Act.

## VII. CONCLUSIONS OF LAW

In seeking a preliminary injunction on a Lanham Act claim, a showing of likelihood of confusion as to source or sponsorship establishes the requisite likelihood of success on the merits as well as risk of irreparable harm (*see Church of Scientology Int'l v. Elmira Mission*, 794 F.2d 38, 41 [2d Cir.1986]; *In re Vuitton et Fils, S.A.*, 606 F.2d 1, 4 [2d Cir.1979]). The plaintiffs have demonstrated the likelihood of confusion due to the defendants' similar trade dress.

In this case, threat of irreparable harm due to consumer confusion is acute because the products are sold in proximity in the very same galleries and stores. Patricia competes with Tarkay in each location by selling limited editions as well as posters to the consuming public.

The Court further finds that the plaintiffs have demonstrated a likelihood of success on the merits. Beyond the inference of intentional copying established here, the plaintiffs have shown that Tarkay's market position and promotional investment will be irreparably damaged without a preliminary injunction (*see Kraft General Foods, Inc. v. Friendship Dairies*, 19 U.S.P.Q.2d 1691, 1991 WL 149755 [S.D.N.Y. June 26, 1991] [Conboy, J.]). The loss of reputation cannot be compensated adequately by the award of money damages (*National Lampoon, Inc. v. American Broadcasting Co., Inc.*, 376 F.Supp. 733 [S.D.N.Y.], *aff'd per curiam*, 497 F.2d 1343 [2d Cir.1974].

Consumer confusion will continue to cause diversion of sales from Tarkay that is impossible to measure (*see Kraft General Foods, Inc. v. Friendship Dairies, supra*). The continued presence of the imitative Patricia trade dress in galleries and shops will erode the uniqueness of the Tarkay mark, in which the plaintiffs have made a substantial investment.

The Court therefore finds that:

1) the plaintiffs have established, by clear and convincing evidence that the Tarkay trade dress has acquired secondary meaning;

2) the plaintiffs have established, by clear and convincing evidence, that a likelihood of confusion exists relative to the consuming public concerning the trade dress of Tarkay vis-a-vis the trade dress of Patricia;

3) the plaintiffs have established by clear and convincing evidence, both (a) irreparable harm, and (b) a likelihood of success on the merits (*see Jackson Dairy, Inc. v. H.P. Hood & Sons*, 596 F.2d 70, 72 [2d Cir.1979]).

## IX. CONCLUSION

Based upon the foregoing, the motion of the plaintiffs Romm Art and London Art for a preliminary injunction pursuant to Fed.R.Civ.P. 65(a) is granted, to the following extent:

(1) the defendants, their officers, agents, servants, employees, attorneys and all persons acting in concert, participation or privity with them and their successors and assigns are preliminarily enjoined, pending the outcome of this action, from publishing, promoting, advertising, marketing, offering for sale, selling or distributing the Patricia limited editions identified as Pat-103 ("Expectation"), Pat 104 ("Cafe de la Paix"), Pat-105 ("Cafe Mon Jardin") and Pat 106 ("Thoughts"); the Patricia posters identified as Pat-500 "("Springtime"), Pat-501 ("Gossip"), Pat-502 ("Seated Gossip"), Pat-503 ("Cafe Torino") and Pat-504 ("A Quiet Afternoon"); and the Patricia tear sheet identified as plaintiffs' Exhibit P;

(2) the Court declines to enjoin the manufacturing, selling and advertising of Patricia limited editions identified as Pat-001, Pat-002, Pat-003, Pat-004, Pat-006, Pat-016, Pat-101 and Pat-102.

The Court further confirms and adopts the recommendation of the Magistrate Judge that the plaintiffs be required to post an undertaking, pursuant to Fed.R.Civ.P. 56(c), in the amount of $20,000.00 as security for the preliminary injunction. The Court hereby directs the plaintiffs to post the undertaking within ten (10) days of the date of this order.

SO ORDERED.