## PIVOT POINT INTERNATIONAL, INC.

### v.

## CHARLENE PRODUCTS, INC., et al.

### No. 90 C 6933.

United States District Court,
N.D. Illinois,
Eastern Division.

Aug. 2, 1996.

F.Supp. 715 (N.D.Ill.1996) (Kocoras, J.); *Bambilla v. Evanston Nissan, Inc.,* No. 94 C 6818, 1996 WL 284954 (N.D.Ill. May 21, 1996) (Leinenweber, J.).

Robert Edward Browne, Jeannine Marie Pisoni, Thomas C. McDonough, Mark R. Galis, Altheimer & Gray, Chicago, IL, Mark Daniel Chapleau, Teller, Levit & Silvertrust, Chicago, IL, John J. Cassidy, Jr., Diane Marie Kehl, Sheila M. Hanrahan, Thomas R. Dee, Vedder, Price, Kaufman & Kammholz, Chicago, IL, for Pivot Point Intern., Inc.

Thomas John Ring, Camille M. Miller, Potthast & Ring, Chicago, IL, James W. Potthast, Law Offices of Potthast & Ring, Chicago, IL, Paul M. Brayman, Brayman & Quall, Chicago, IL, for Charlene Products, Inc.

Thomas John Ring, Camille M. Miller, Potthast & Ring, Chicago, IL, James W. Potthast, Law Offices of Potthast & Ring, Chicago, IL, Paul M. Brayman, Brayman & Quall, Chicago, IL, John Vander Weit, Jr., Homewood, IL, for Peter Yau.

## Memorandum

EASTERBROOK, Circuit Judge.[†]

The parties asked Judge Gettleman to review Magistrate Judge Keys' rulings of May 21 on a large number of motions in limine in this copyright action with state-law counterclaims. Before he could act, the case was transferred to me. As is inevitable, a new judge has some new ideas about the case. Although I will respect Judge Gettleman's decisions (and those of his predecessors; this case has been pending for six years) as part of the law of the case, I also share Judge Keys' sense that many of the motions in limine are disguised motions for partial summary judgment, which should be addressed and resolved explicitly rather than by indirection.

A review of the draft pretrial order leads me to conclude that this case could readily be simplified for trial—if indeed it needs to be tried after it has been simplified. I therefore reopen the time for filing dispositive motions. Both sides have 45 days to file motions for summary judgment addressed to any claim (or claims) in the case. After I have received responses, I may hold oral argument on the motions. At all events, after doing whatever work is possible on the summary judgment front, I will hold another pretrial conference under Fed.R.Civ.P. 16 to see whether it is possible to consolidate claims, cut down on overlapping legal theories, and so on.

■ Because the parties have lavished time on the motions in limine, however, I now address the objections to Judge Keys' report. My rulings reflect an approach to litigation different from that of Judge Keys. He followed the principle that a motion in limine should be granted "only when evidence is clearly inadmissible on all potential grounds." *Hawthorne Partners v. AT & T Technologies, Inc.*, 831 F.Supp. 1398, 1400 (N.D.Ill.1993). Judge Conlon's opinion in *Hawthorne Partners* expresses a preference for resolving evidentiary disputes at trial. Doubtless the utility of evidence is best addressed then, for how it fits in the context of the parties' dispute will be clearer at trial. But there is also great value in resolving as many disputes in advance of trial as is possible. Knowledge may enable the parties to avoid the costs of bringing witnesses to the courtroom and will enable them to concentrate their energies (and organizational skills) on the subjects that will actually be resolved at trial. Knowledge of what lies in store also may promote settlement by closing the gap between the parties' estimates of the likely outcome. I therefore believe that a district court should extend a hospitable reception to motions in limine and grant those that demonstrate that evidence ought not properly be used for the purpose its proponent advances to justify its introduction.

I address the motions in the same order Judge Keys did. Pivot Point's motions are in group A, and Charlene Products' in group B. I omit discussion of items on which either there were no objections, or I agree with Judge Keys. What follows covers only areas

[†] Of the Seventh Circuit, sitting by designation.

of disagreement; the rest of the order is approved.

■ A.1. By a counterclaim, Charlene Products contends that Pivot Point interfered with a contract it had to sell mannequin heads to Main Street Beauty Supply. Pivot Point's motion in limine can be summed up as: "What contract?" Charlene Products has not come up with a written document (which raises questions under the statute of frauds, although the parties have not addressed them), the manager of Main Street Beauty Supply said at his deposition that there was no contract and that Main Street Beauty Supply simply bought mannequin heads as and when needed, and Peter Yau, Charlene Products' principal, cannot remember the terms of the purported oral contract. Unlike Judge Keys, I think that on this record the evidence of a contract between Charlene Products and Main Street Beauty Supply is too thin to support a jury verdict in favor of Charlene Products. A "contract" without *any* terms is no contract.

Charlene Products does not relate what concrete terms could be established at trial by admissible evidence. I take that as a concession. The UCC allows the imputation of commercially ordinary terms to complete a contract, but so far as I can see all Charlene Products and Main Street Beauty Supply had was a course of dealing, which is not a contract in the UCC's terminology. Main Street Beauty Supply was free to cease buying for any reason it deemed sufficient. Under *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–51, 106 S.Ct. 2505, 2510–12, 91 L.Ed.2d 202 (1986), a legal claim dependent on evidence insufficient to support a verdict is removed from the jury's purview. This is more appropriately called summary judgment, but it is nonetheless a good reason to simplify the proceedings.

It may be that this step simplifies only exposition. Unprivileged interference with an established course of dealing can be tortious—the tort is interference with prospective contractual or commercial advantage rather than interference with contract. So if Pivot Point chooses to make a motion for summary judgment on the "interference" claim in light of this ruling, the parties should address the question whether substance rather than nomenclature is at issue.

■ A.2. Pivot Point wants to keep out of the record any evidence concerning its (and Leo Passage's) assets and tax returns. Judge Keys said that this material is clearly relevant to punitive damages, but he did not discuss (nor does Charlene Products mention) *Zazú Designs v. L'Oréal, S.A.*, 979 F.2d 499, 508–09 (7th Cir.1992), which holds the contrary, at least for claims based on federal law. Cf. *Kemezy v. Peters*, 79 F.3d 33 (7th Cir.1996). It is interesting to note that, even when considering punitive damages based on state law, the Supreme Court did not treat the defendant's wealth as relevant. *BMW of North America, Inc. v. Gore*, —— U.S. ——, —— - ——, 116 S.Ct. 1589, 1598–1603, 134 L.Ed.2d 809 (1996). Basing a decision on income and assets not only is inconsistent with the privacy interests that usually protect those details, on which see *Methodist Hospitals, Inc. v. Sullivan*, No. 95–3078, 91 F.3d 1026 (7th Cir.1996), slip op. 9–10, but also calls into question the courts' commitment to do equal justice to the rich and the poor.

Charlene Products has not provided any reason for introducing financial and tax information other than a general claim that it may be relevant to punitive damages. Perhaps that is so for claims under state law. But Charlene Products' position as it stands are too unfocused to justify the use of information that has a substantial potential to invade privacy, and an additional potential to distract the jury from the essential issues of the case. I therefore grant the motion in limine and exclude the evidence under Fed.R.Evid. 401 with respect to the claims based on federal law, and Rule 403 with respect to the claims based on state law. This decision is conditional with respect to the state claims; Charlene Products is free to make a more specific demonstration of just what financial evidence it seeks to introduce, and why it is important under state law.

■ A.3. Pivot Point wants to keep out of evidence certain invoices that Charlene Products evidently believes show that Pivot Point underpaid its customs duties, enabling

it to reduce the price of its products. Judge Keys denied the motion, on the ground that the jury could conclude that even two low invoices were "part of a pattern of unfair competition."

■ Charlene Products has not identified any statute or case making such information legally relevant. Let us suppose that Pivot Point has underpaid its customs duties, a species of tax. Why is the right amount of tax a subject to be disputed between Pivot Point and Charlene Products, rather than between Pivot Point and the United States? Charlene Products is not a third party beneficiary of customs duties, and powerful principles prevent people from litigating strangers' tax obligations. See, e.g., *Allen v. Wright*, 468 U.S. 737, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984); *Calderon v. Witvoet*, 999 F.2d 1101, 1105–06 (7th Cir.1993). Saving on duties and other excises may lead to lower prices in the marketplace, but tax fraud should be punished according to its schedule of penalties without an increase (under tort law) if the defrauder passes the savings along to customers—a step that should mitigate rather than aggravate the penalty. Short of predatory pricing that produces a monopoly (this is not an antitrust case) lower prices are themselves commendable, not actionable. *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 113 S.Ct. 2578, 125 L.Ed.2d 168 (1993).

If we are to start down Charlene Products' road, what follows? Can one business show that another took excessive depreciation, improperly reducing its taxes? Paid high compensation to its chief executive, producing a deduction beyond "ordinary and necessary" business expenses? I do not think any of this legally relevant to a claim of unfair competition, and at all events I would exclude the evidence under Rule 403. Trial must be kept focused on the core legal claims. An excursion into the payment of duties and taxes would be a time consuming distraction, with real potential for unfair prejudice and essentially no potential to contribute to an accurate decision. This motion in limine is granted.

■ A.5. Pivot Point wants to exclude evidence concerning its communications with customs officials. Charlene Products seeks to show that Pivot Point induced these officials to exclude (or delay entry of) its mannequin heads by contending that Charlene Products' goods violate Pivot Point's copyright. Judge Keys denied this motion, stating that the evidence "is probative of whether or not Pivot Point unfairly competed with Charlene." The premise of this ruling—that communications to the federal government can be the basis of tort liability if they lead to adverse action against one's competition—is inconsistent with the *Noerr–Pennington* doctrine. See *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961); *United Mine Workers v. Pennington*, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965); *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972); *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993). The *Noerr–Pennington* doctrine has an exception for certain kinds of fraud, so the order granting this motion in limine is conditional. But unless Charlene Products can show that it fits within the exemption, evidence on this subject will be excluded.

■ A.9. Charlene Products wants to use a document showing that on September 15, 1993, Chang Yiu Kiang assigned his rights in a long neck mannequin head to Charlene Products. Pivot Point wants to keep this document out. Judge Keys denied the motion in limine, ruling that the document could be relevant to "originality" and therefore to the validity of Pivot Point's copyright in its mannequin. I don't see how. If Chang Yiu Kiang is the designer of a mannequin head that Pivot Point copied, then the validity of the copyright is doubtful—but not because Chang did, or did not, assign his rights to Charlene Products. Assignment would be relevant to ownership, not to originality. An assertion in the document that Chang created a long-neck design in 1987 could be relevant to originality (although copyright protects independent creations), but is hearsay. So what is relevant in the document is inadmissible, and what is otherwise admissible is

irrelevant. Unless Charlene Products can show me what germane subject it is relevant to, the document will be excluded under Rule 401.

■ A. 10. Pivot Point believes that Charlene Products copied descriptions out of its catalogs. It sought, in discovery, to learn of any independent source Charlene Products had for its product numbers and descriptions. When the answers were not satisfactory, Pivot Point sought by motion in limine to exclude evidence of any such alternative sources.

Magistrate Judge Keys denied this motion on the ground that the sources of catalog numbers and descriptions are relevant to the originality of Pivot Point's long neck mannequin head and to the originality of the catalog itself. This seems to me both doubtful (for reasons covered immediately above) and beside the point of the motion. But the motion is itself miscaptioned. Pivot Point really wants either a discovery sanction under Fed.R.Civ.P. 37, which it should seek by motion addressed to that possibility, or an admission that Charlene Products has no other source. The best way to pin this down would be for Pivot Point to file a request for admission under Fed.R.Civ.P. 36, and if Charlene Products does not admit that its source was the 1988 Pivot Point catalog, then Charlene Products must come up with some other source (or face the heavy penalties associated with wrongful failure to admit). Perhaps Pivot Point will explain in the process why it calls the catalog claim one for unfair trade practices, rather than copyright infringement.

■ A.11. I agree with Judge Keys that Cy Kennedy's testimony concerning a conversation with Peter Yau on the subject of Pivot Point's supposed intent to drive Charlene Products out of business must be excluded as hearsay. I grant the motion to exclude Kennedy's further proposed testimony, as "lay opinion," that large companies often sue small competitors. There is no foundation for this testimony; it is not a proper subject of expert testimony (see Fed. R.Evid. 702); and whatever marginal relevance the testimony has would be swamped by its potential for distraction of the jury and undue prejudice, so the evidence will be excluded under Rule 403.

B.4. Pivot Point wants Professor Lloyd Weinreb to testify as an expert witness about the copyright process in general, and the copyrightability of mannequin heads in particular. Judge Keys granted Charlene Products' motion in limine to exclude any testimony about the copyrightability of *these* mannequin heads, but he otherwise denied the motion. Pivot Point objects to what it sees as undue restrictions on Professor Weinreb's testimony, but I think that the motion should have been granted in full. Professor Weinreb is a distinguished scholar, but he will not be allowed to testify in this case.

■ Whether mannequin heads in general, or these mannequin heads in particular, are copyrightable is a question of law, which the court will decide (perhaps in response to dispositive motions soon to be filed). A jury has nothing to do with this subject. Cf. *Markman v. Westview Instruments, Inc.,* — U.S. ——, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). If the court determines that mannequin heads are copyrightable subject matter, the jury will be so instructed. Similarly, the court will provide the jury with any necessary general information about the operation of the copyright system. There is no need for expert testimony on this subject; in a trial there is only one legal expert—the judge.

Citing *Carol Barnhart Inc. v. Economy Cover Corp.,* 773 F.2d 411 (2d Cir.1985), Pivot Point observes that several cases have permitted expert legal testimony of the kind Professor Weinreb would deliver. What Pivot Point omits is the fact that the second circuit's position on legal-expert testimony has been disapproved by the seventh. *Bammerlin v. Navistar International Transportation Corp.,* 30 F.3d 898, 900–01 (7th Cir. 1994). See also, e.g., *Urso v. United States,* 72 F.3d 59, 60 (7th Cir.1995); *Roulo v. Russ Berrie & Co.,* 886 F.2d 931, 940 (7th Cir. 1989). Even in the second circuit, the admission of such testimony is within the trial court's discretion, see *United States v. Bilzerian,* 926 F.2d 1285, 1294–95 (2d Cir.1991),

and whatever discretion I may possess under seventh circuit law is now exercised adversely to its use in this case.

These rulings should cut down on the complexity of trial, and it may be that rulings on dispositive motions now to be filed can make additional headway.