**Jack LEIGH, Plaintiff,**

v.

**WARNER BROS., A DIVISION OF TIME WARNER ENTERTAINMENT COMPANY, L.P., Defendant.**

No. CV 497–340.

United States District Court,
S.D. Georgia,
Savannah Division.

June 22, 1998.

---

Thomas Richardson Herndon, Robert Bartley Turner, Robert Scot Kraeuter, Savage, Herndon & Turner, Savannah, GA, for Jack Leigh.

Steven Elliot Scheer, Lee, Black, Scheer & Hart, Savannah, GA, David J. Stewart, Mar-

tin J. Elgison, Angela Payne James, Alston & Bird, Atlanta, GA, for Warner Bros., Inc.

### ORDER

NANGLE, District Judge.

Before the Court are: (1) defendant Warner Bros.' motion for partial summary judgment on the issue of copyright infringement; (2) plaintiff's cross-motion for partial summary judgment on the issue of copyright infringement; and (3) defendant's converted motion to dismiss the Lanham Act claims.

## I. Background

In July, 1993, Random House commissioned a photograph by plaintiff, a professional photographer, to be used on the cover of the book *Midnight in the Garden of Good and Evil, A Savannah Story,* by John Berendt ("the book"). The photograph ultimately used was of a sculpture in Savannah's Bonaventure Cemetery known as "the Bird Girl." The Bird Girl was sculpted in 1938, by Sylvia Shaw Judson. Plaintiff entitled his photograph "Midnight, Bonaventure Cemetery, Savannah, Georgia." On or about October 29, 1996, plaintiff applied to the register of copyrights for a certificate of registration for the photograph. The Bird Girl sculpture had been in the Bonaventure Cemetery since Ms. Lucy Trosdal placed the statue there in her family's burial plot. Once the book was published and became a bestseller, the Bird Girl statue attracted a great deal of attention. To protect the statue and the tranquility of the family burial plot, Ms. Trosdal removed the statue from the cemetery.

In 1997, Warner Bros. began filming a motion picture ("the film") based on the book. In April, 1997, plaintiff sent a letter to Warner Bros. inquiring whether Warner Bros. intended to use his photograph in connection with film publicity. Warner Bros. indicated that it had no intention of using his photograph, but that it might create its own images of the Bird Girl. The film, also entitled *Midnight in the Garden of Good and Evil,* was released on November 21, 1997. In connection with the film, Warner Bros. obtained permission from Sylvia Shaw Judson's heir to make a replica of the Bird Girl. Warner Bros. made the replica of the sculpture and applied a "weathered" finish to it. Warner Bros. also created a base similar to the original one used in the cemetery. Warner Bros. placed the replica on its base in a different location in Bonaventure Cemetery,[1] and created still photographs and film footage of the replica. Warner Bros. produced several images that are the subject of this litigation, including promotional images, footage from the film itself, Internet icons, and the cover to the film soundtrack.

## II. Warner Bros.' Motion for Partial Summary Judgment

Warner Bros. has moved for partial summary judgment on the copyright claim on the basis that any similarities between the photographs are non-copyrightable or that no reasonable juror could find that the photos were substantially similar. The motion for summary judgment extends to all of Warner Bros.' images at issue in this action except for the Internet icon.[2]

Summary judgment serves to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Fed.R.Civ.P. 56 advisory committee's note, *cited in Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). It is appropriate only when the pleadings, depositions and affidavits submitted by the parties

---

1. Due to problems gaining permission from the Trosdal family, Warner Bros. was unable to photograph or film the replica of the Bird Girl in its original location in the cemetery.

2. Warner Bros. conceded the existence of genuine issues of material fact with respect to this icon in its response in opposition to plaintiff's cross motion for partial summary judgment (dated March 20, 1998) and in its reply to plaintiff's opposition to defendant's motion for partial summary judgment (dated March 12, 1998). A copy of this icon is attached to this Order as Appendix 7. [Editor's Note: Appendix not reproducible for purposes of publication.]

indicate no genuine issue of material fact and show that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A court must view the evidence and any inferences that may be drawn from it in the light most favorable to the nonmovant. *Mercantile Bank & Trust Co., Ltd. v. Fidelity & Deposit Co.,* 750 F.2d 838, 841 (11th Cir.1985).

The party seeking summary judgment must first identify grounds demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Thompson v. Metropolitan Multi–List, Inc.,* 934 F.2d 1566, 1583 n. 16 (11th Cir.1991), *cert. denied,* 506 U.S. 903, 113 S.Ct. 295, 121 L.Ed.2d 219 (1992). Such a showing shifts to the nonmovant the burden to go beyond the pleadings and present affirmative evidence showing that a genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256–57, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Thompson,* 934 F.2d at 1583 n. 16. "Factual disputes that are irrelevant or unnecessary will not be counted," *United States v. Gilbert,* 920 F.2d 878, 882–83 (11th Cir.1991) (citation omitted), and a mere scintilla of evidence supporting the nonmovant's position will not fulfill this burden. *Walker v. Darby,* 911 F.2d 1573, 1577 (11th Cir.1990).

■ To establish copyright infringement, two elements must be proved: ownership of a valid copyright and copying of constituent elements of the work that are original. *Feist Publications, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991); *BellSouth Advertising & Publ'g Corp. v. Donnelly Info. Publ'g, Inc.,* 999 F.2d 1436, 1440 (11th Cir.1993) (en banc); *Original Appalachian Artworks, Inc. v. Toy Loft, Inc.,* 684 F.2d 821, 824 (11th Cir.1982). For purposes of its motion for summary judgment, Warner Bros. concedes that Leigh holds a valid, if limited, copyright in the Bird Girl photograph on the cover of the book.

■ Copying may be proved by direct evidence. However, since direct evidence of copying rarely exists, this Circuit has developed a two-step method by which copying may be proved indirectly. "The plaintiff is first required to show that the defendant had access to the plaintiff's work; second, the plaintiff must show that the defendant's work is substantially similar to the plaintiff's protected expression." *Beal v. Paramount Pictures Corp.,* 20 F.3d 454, 459 (11th Cir.1994); *Original Appalachian Artworks,* 684 F.2d at 829. Substantial similarity is determined by the average lay observer test: "[s]ubstantial similarity exists where an 'average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work.'" *Original Appalachian Artworks,* 684 F.2d at 829 (quoting *Durham Indus., Inc. v. Tomy Corp.,* 630 F.2d 905, 911 (2d Cir.1980)). A court may grant summary judgment for the defendant if the similarity between the two works concerns only noncopyrightable elements, or if no reasonable jury upon proper instruction would find that the two works are substantially similar. *Beal,* 20 F.3d at 459; *Gentieu v. John Muller & Co.,* 712 F.Supp. 740, 742 (W.D.Mo.1989).

### A. Indirect Evidence of Copying

■ For the purpose of this summary judgment motion, Warner Bros. concedes access. Therefore, this Court must evaluate the images side-by-side to determine if they are substantially similar. *Beal,* 20 F.3d at 456. Because substantial similarity must be determined only with respect to elements of the photograph that are capable of being protected, *id.* at 459, this Court must first determine which elements in plaintiff's work are entitled to protection. *Gentieu,* 712 F.Supp. at 742. Whether elements of a photograph are subject to copyright protection is a matter of law for the Court to determine. *Cf. Pivot Point Int'l, Inc. v. Charlene Prods., Inc.,* 932 F.Supp. 220, 225 (N.D.Ill.1996) (describing issue of whether mannequin heads are copyrightable as question of law for court to decide).

■ Copyright law confers protection only over the original expression of an idea and

not the idea itself. 17 U.S.C. § 102(b); *Feist*, 499 U.S. at 345, 111 S.Ct. 1282; *Mazer v. Stein*, 347 U.S. 201, 217–18, 74 S.Ct. 460, 98 L.Ed. 630 (1954); *Baker v. Selden*, 101 U.S. 99, 102–03,, 11 Otto 99, 25 L.Ed. 841 (1879). "The primary objective of copyright is not to reward the labor of authors, but '[t]o promote the Progress of Science and useful Arts.' ... To this end, copyright assures authors the right to their original expression, but encourages others to build freely upon the ideas and information conveyed by a work." *Feist*, 499 U.S. at 349–50, 111 S.Ct. 1282 (quoting U.S. Const. art. I, § 8, cl. 8). This principle is known as the idea-expression dichotomy. Under this principle, it is well established that the presence of the same subject matter in two works does not prove copying or infringement; *Gentieu*, 712 F.Supp. at 742; and the Eleventh Circuit has expressly cautioned trial courts in this Circuit "not to be swayed by the fact that two works embody similar or even identical ideas." *Original Appalachian Artworks*, 684 F.2d at 829 n. 11.

■ In cases involving photographs, a plaintiff cannot copyright the subject matter of the photo, *Epic Metals Corp. v. Condec, Inc.*, 867 F.Supp. 1009, 1013 (M.D.Fla.1994); *Gentieu*, 712 F.Supp. at 742; the copyrightable elements include the photographer's selection of background, lights, shading, positioning of subject, and timing. *See Burrow–Giles Lithographic Co. v. Sarony*, 111 U.S. 53, 60, 4 S.Ct. 279, 28 L.Ed. 349 (1884) (stating posing of subject, lighting, shading, suggesting and evoking desired expression in subject, and selection and arrangement of costume, draperies, and accessories are origi-

nal aspects of a photograph); *Rogers v. Koons*, 960 F.2d 301, 307 (2d Cir.1992) ("Elements of originality in a photograph may include posing the subjects, lighting, angle, selection of film and camera, evoking the desired expression, and almost any other variant involved."); *Gentieu*, 712 F.Supp. at 742 (listing photographer's selection of background, lights, shading, positioning and timing as copyrightable elements).[3]

■ Furthermore, just as ideas are not copyrightable, neither are expressions that are commonly associated with or naturally flow from certain themes and subjects. This concept, known as *scenes à faire*, recognizes that certain expressions lack enough originality to justify copyright protection. *Beal*, 20 F.3d at 459–60 (holding mosque-style palace with minarets *scenes à faire* in story about Arabian or African royalty).

In this case, Warner Bros. is entitled to summary judgment if: (1) similarities between expressions apply only to noncopyrightable elements or (2) no reasonable jury, properly instructed could find that Warner Bros.' works are substantially similar to protected elements of Leigh's photograph. *Id.* at 459.

■ The Court first notes that plaintiff is not entitled to copyright protection of his choice of subject matter, i.e., the Bird Girl in the Bonaventure Cemetery. Since the sculpture had been in the same position in the Trosdal plot for approximately fifty (50) years, the plaintiff cannot claim originality in the background for his photograph. Additionally, the plaintiff did not select the pose or expression of the statue nor did he alter

---

3. Plaintiff seems to argue that these elements can be copyrightable even if the photographer had no hand in selecting them. Implicit in the cases is the principle that it is the photographer's original selection of these elements and not their fortuitous occurrence that makes the elements copyrightable. *See Burrow–Giles Lithographic Co.*, 111 U.S. at 60, 4 S.Ct. 279 ("[P]laintiff made [the photograph] ... entirely from his own original mental conception, to which he gave visible form by posing ..., selecting and arranging [the various elements of the photograph] ...."); *Rogers*, 960 F.2d at 307 ("Rogers' inventive efforts in

posing the group for the photograph, taking the picture, and printing 'Puppies' suffices to meet the original work of art criteria."); *Gentieu*, 712 F.Supp. at 742 ("The copyrightable elements, therefore, include the photographer's selection of background, lights, shading, positioning, and timing."). Therefore, it follows that if the photographer had no hand in creating a particular element, as when a photographer takes a photo of a statue whose pose has been selected by someone else, the photographer cannot claim that the pose of the subject is a copyrightable element.

its physical appearance in any way prior to taking his photograph. Therefore, he can claim no originality in the expression, pose, or appearance of the Bird Girl in his photograph.

Nor can plaintiff claim that the association of the statue with the book is an expression capable of protection. It appears that the final decision for the book cover was made by Random House from many photographs submitted by plaintiff for that purpose. Even if plaintiff recommended the Bird Girl photograph above all the other submissions, the decision was still left with Random House. Thus, this element is one over which plaintiff exercised no creative control. Even if the association of the statue with the book was under plaintiff's control, however, this association is merely an idea that cannot be copyrighted by plaintiff.[4]

Finally, plaintiff cannot claim that the "eerie" or "spiritual" mood of the photograph is an expression capable of protection. Statues in cemeteries are often photographed in a manner evoking an "eerie" or "spiritual" mood, and thus, these moods can be said to "flow naturally" from the subject matter of the Bird Girl in Bonaventure Cemetery. Hence, plaintiff's expression of that mood is subject to the *scenes à faire* doctrine and is not protected by copyright law.

Consequently, any protection to which the plaintiff is entitled must come from the original aspects of his photo. *Burrow–Giles Lithographic Co.*, 111 U.S. at 60, 4 S.Ct. 279; *Gentieu*, 712 F.Supp. at 742. This Court finds that the only copyrightable aspects of plaintiff's photograph are his selection of lighting, shading, timing, angle, and film. These are the only elements of the photograph over which the plaintiff exercised creative control and, therefore, are the only elements which constitute original expression protected by copyright law. 17 U.S.C. § 102(b). An examination of plaintiff's photograph and defendant's images with respect to these elements is necessary to determine if there is a genuine issue of material fact as to the substantial similarity of these elements.

**B. The Images**[5]

Plaintiff's copyrighted photograph (App.1) of the Bird Girl is a black-and-white photograph, centered and head-on,[6] with the camera angle lowered slightly in order to make the statue appear taller. A "halo" of light comes through the trees and glows about the head and shoulders. Background trees from the cemetery frame the sculpture, and multiple headstones and flowers are also visible in the background. The photograph was taken in low evening light. The sculpture itself is dark in color, with lighter-colored splotches on its skirt, and its right shoulder is lighter in color than the rest of the figure. There are no objects in front of the sculpture.

---

**4.** Plaintiff contends in his affidavits that the statue represents the idea of a final judgment on the main character in the book. The idea of a forlorn cemetery statue representing final judgment cannot be protected by copyright. The plaintiff's original expression of that idea, i.e. the elements of his photograph over which he exerted original, creative control, can be protected. It is these elements that must be compared with the defendant's works and not the ideas that they convey. *Original Appalachian Artworks*, 684 F.2d at 829 n. 11.

**5.** The Court will not describe the images in detail, as they are appended to this order. A brief description of the materials is sufficient for the purposes of resolving the motions before the court. The images appended are as follows:
 Appendix 1–the photograph on the cover of the book

Appendix 2–Warner Bros.' promotional photograph
Appendix 3–Warner Bros.' movie poster
Appendix 4–Warner Bros.' newspaper advertisement
Appendix 5–the cover of the film soundtrack
Appendix 6–Warner Bros.' *Midnight in the Garden of Good and Evil* Web page
Appendix 7–Warner Bros.' Internet icon
Appendix 8–videotape including promotional footage and film footage of *Midnight in the Garden of Good and Evil*
[Editor's Note: Appendices not reproducible for purposes of publication.]

**6.** The parties have disputed the meaning of "head-on." For purposes of this Order, the term means a straight, frontal view of an object with no rotation to one side or the other.

All of Warner Bros.' images at issue in this motion for summary judgment are of the Bird Girl replica, base and plinth [7] in the Bonaventure Cemetery. Warner Bros.' promotional photograph (and each of the promotional materials derived from it) contains an image of the replica. (App. 2, 3, 4, 5 & 6). In the Warner Bros. promotional photograph (App.2), the sculpture is set farther back, is slightly off-center to the right and is smaller in perspective than in plaintiff's photograph. There are no splotches visible on the sculpture's skirt. More headstones are visible in the foreground, and the trees are much larger in perspective than the Bird Girl. The most prominent headstone is a Celtic cross on the right side of the photograph. The headstones in the foreground do not appear in plaintiff's photo. Light streams through the trees, and a bright beam shines down on the sculpture's right shoulder. The light is so bright that there is nothing visible behind the statue. Finally, Warner Bros.' promotional photograph has an orange tint to it.

Warner Bros.' other images are variations on the same theme. Appendix 3 contains images of the cast on the left side of the photo, and little else is visible except the sculpture, the beam of light and Spanish moss. This image has a greenish tint. The newspaper promotional image (App.4) contains the sculpture on the left, the headstones in the foreground and Spanish moss overhead. This image is in black-and-white.

On the soundtrack cover (App.5), the image of the Bird Girl is larger and centered. Headstones are still visible in the foreground, but the trees are not visible in the image. A beam of light shines from the left, landing on the sculpture's right shoulder. The sculpture is much lighter in color than in plaintiff's photograph. This photograph also has a greenish tint. The image on Warner Bros' *Midnight in the Garden of Good and Evil* Web page (App.6) appears to be a black-and-white scanned version of the promotional photograph with a darker tint.

The final image, the Internet icon on Warner Bros.' Web page (App.7), shows just the head of the Bird Girl. Behind her are some trees and moss in much the same position as in plaintiff's photograph. The icon has a blue background.

The filmed footage also depicts the Bird Girl sculpture in the Bonaventure Cemetery. There are three video sequences at issue that include the sculpture. The first filmed image at issue is a promotional clip. The image is very foggy, and includes the sculpture and the Celtic cross headstone contained in the promotional photograph (App.8). The head of the statue is never shown, and no background is visible. The second image, from the beginning of the film, starts out in color with the sculpture positioned at the far left of the screen (App.8). The image fades to black-and-white. The plinth is never visible, and the camera eventually pans up to a shot of the sculpture from the thighs up. The background trees and markers are different from those included in plaintiff's photograph. The film footage shows only one burial plot in the background on the right side of the photograph, and the trees and bushes are much closer to the statue than in the plaintiff's photograph. In the third filmed image, also from the film itself, the image starts as a side view of the sculpture and moves around to the front. Only the head and shoulders of the sculpture are visible until the camera pans back to a shot of the sculpture from the thighs up. The background trees and markers are the same as those in the second video image and thus are different from those in plaintiff's photograph. It is apparent that these last two filmed images were filmed in different sections of the Bonaventure Cemetery than the Trosdal plot, the site of plaintiff's photograph.

This Court finds that the expression contained in Warner Bros.' photograph and associated promotional materials (excluding the Internet icon) are not substantially similar to plaintiff's copyrighted expression. The copyrightable elements of plaintiff's photograph, the selection of lighting, shading, timing, angle and film, have not been copied by Warner

---

**7.** A plinth is "the lowest member of a base." Webster's Third New International Dictionary.

Bros. Even the noncopyrightable elements of plaintiff's photograph, the background scenery and detail, are significantly different in Warner Bros.' images because the images were made in a different place in the cemetery. Plaintiff may be correct in asserting that if it were not for his idea, the Bird Girl would not be associated with *Midnight in the Garden of Good and Evil.* Nevertheless, copyright law does not protect his idea. 17 U.S.C. § 102(b). Copyright law protects only his original expression of that idea. *Feist,* 499 U.S. at 345, 111 S.Ct. 1282; *Mazer,* 347 U.S. at 217–18, 74 S.Ct. 460; *Baker,* 101 U.S. at 102–03, 11 Otto 99. Warner Bros.' expressions of that idea are original and different from plaintiff's. The only similarities between the images are due solely to the fact that all the images are of the sculpture in the cemetery. This aspect of the images, however, is not copyrightable. Accordingly, Warner Bros.' images of the Bird Girl in Bonaventure Cemetery (except for the Internet icon) are not substantially similar to plaintiff's as a matter of law, and Warner Bros. is entitled to summary judgment on the copyright claim regarding those images.

## III. Plaintiff's Cross–Motion for Partial Summary Judgment

■ Defendant's motion for partial summary judgment having been granted with respect to all images except the Internet icon, the Court will address plaintiff's cross-motion with respect to the Internet icon only (App.7).

The Court will apply the same standard in analyzing the plaintiff's motion for summary judgment that it applied to defendant's motion for summary judgment. The plaintiff is first required to show that the defendant had access to the plaintiff's work; second, the plaintiff must show that the work is substantially similar to the plaintiff's protected expression. *Beal v. Paramount Pictures Corp.,* 20 F.3d 454, 459 (11th Cir.1994). Defendant has raised the defense of fair use with respect to this image. The Internet icon does contain many elements that are similar to plaintiff's photograph (App.7). However, the Court is not prepared at this time to find copyright infringement as a matter of law. Further discovery is needed in order to determine whether defendant wrongfully copied plaintiff's work when creating its Internet icon and whether defendant is entitled to any defenses.[8] The Court notes that its denial of plaintiff's motion for summary judgment at this stage of the litigation does not prejudice plaintiff's ability to renew the motion at the close of discovery.

## IV. Defendant's Motion for Summary Judgment on the Lanham Act Claims [9]

■ Counts 2–5 of plaintiff's amended complaint allege violations of the Lanham Act, 15 U.S.C. § 1125, including false designation of origin, false description, distortion and misrepresentation of plaintiff's artistic work and misattribution of authorship. The Lanham Act protects trademarks, service marks and trade dress.[10] The purpose of a trademark, service mark or trade dress is "to identify one seller's goods and distinguish them from goods sold by others." 1 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 3:2 (4th ed.1998). Thus, "to create trademark or trade dress rights, a designation must be proven to perform the job of identification

---

8. Defendant conceded access to plaintiff's work in paragraph 22 of its answer. Therefore, the only issues that remain are copying and defenses.

9. The parties included and referred to evidence beyond the pleadings in arguing defendant's motion to dismiss and in arguing the merits of plaintiff's motion for preliminary injunction. Pursuant to Rule 12(b), the Court converted the motion to dismiss to a motion for summary judgment on May 8, 1998.

10. "Trade dress includes 'the total image of a product and may include features such as size, shape, color or color combinations, texture, graphics, or even particular sales techniques.'" *The Step Co. v. Consumer Direct, Inc.,* 936 F.Supp. 960, 964 (N.D.Ga.1994) (quoting *AmBrit v. Kraft, Inc.,* 812 F.2d 1531, 1535 (11th Cir. 1986)).

.... If it does not do this, then it is not protectable as a trademark, service mark, trade dress or any similar exclusive right." *Id.* § 3:3. In order to show a violation of the Lanham Act, a plaintiff must prove that it has a valid trademark, service mark or trade dress and that the defendant is using a word, name, symbol, or device that is likely to cause confusion with the plaintiff's use of its trademark, service mark or trade dress. *See Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.,* 106 F.3d 355, 358 (11th Cir.1997) (stating rule for trademarks); *Investacorp, Inc. v. Arabian Inv. Banking Corp.,* 931 F.2d 1519, 1521–22 (11th Cir.1991) (stating rule for service marks); *Original Appalachian Artworks v. Toy Loft, Inc.,* 684 F.2d 821, 831 (11th Cir.1982) (stating rule for trade dress).

### A. Validity of Plaintiff's Trademark

■ In applying these rules to pictures or artwork, one must be careful to avoid confusing use of the work to identify the artist with use of the work to identify the source of goods or services.

> In determining the existence of trademark rights in a picture, the focus is on whether that picture serves to identify the source of goods and services in connection with which the picture is used. The identity of the designer or artist who created the image is irrelevant unless that person is identified as the source of the product or service sold under the trademark image.

1 *McCarthy* § 3:4. Thus, it follows that if a picture or work of art merely identifies the artist rather than any products or services, it cannot be protected as a trademark. *See Hughes v. Design Look, Inc.,* 693 F.Supp. 1500, 1505 (S.D.N.Y.1988) (holding estate of Andy Warhol had no trademark rights in Warhol paintings that were copied and included in defendant's calendar as they were never used by artist to identify source of goods or services). This rule applies even if the work is an example of an artist's unique artistic style. Style is a matter more properly protected by copyright law. *Galerie Fur-*

*stenberg v. Coffaro,* 697 F.Supp. 1282, 1290 (S.D.N.Y.1988) (holding unique artistic style of Salvador Dali is not protected by trademark law; rather any protection available is through copyright law).

There has been a debate over the use of trademark law to protect the rights of artists in their visual style. The better rule appears to be that the protection an artist receives against infringement of his work arises under copyright law, not the Lanham Act. *Galerie Furstenberg,* 697 F.Supp. at 1290. *Cf. Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.,* 58 F.3d 27, 32 (2d Cir.1995) ("[J]ust as copyright law does not protect ideas but only their concrete expression, neither does trade dress law protect an idea, a concept, or a generalized type of appearance.").

Plaintiff cites *Hartford House Ltd. v. Hallmark Cards, Inc.,* 647 F.Supp. 1533 (D.Colo. 1986), and *Romm Art Creations v. Simcha Int'l, Inc.,* 786 F.Supp. 1126 (E.D.N.Y.1992), for the contrary proposition that artistic works are entitled to protection under the Lanham Act as distinctive marks. To the extent that these opinions can be read as standing for this proposition, however, they have been roundly criticized for improperly applying the Lanham Act to claims that are truly copyright claims. *See, e.g.,* William P. Fitzpatrick, *The Hazards of Extending Copyright or Trademark Protection to an Artist's Visual Style,* 17 Colum.-VLA J.L. & Arts 453, 463–64 (1994) (noting that the *Romm* court misinterpreted holdings in prior case law in reaching conclusion that Lanham Act applies to works of art and that *Hartford House* was clarified on appeal to show that "artistic style alone cannot receive trade dress protection"); Mark Traphagen, *Stretching the Canvas: Protection of Visual Artistic Styles in Works of Fine Art Under Section 43(a) of the Lanham Act,* 10 Ent. & Sports Law. 3, 5 (Summer 1992) ("*Romm Art* is a perfect example of a failed claim for copyright infringement masquerading as one for unfair competition.").

*Hartford House* involved a trade dress dispute between rival greeting card companies

which manufactured similarly designed emotionally expressive non-occasion greeting cards. *Hartford House,* 647 F.Supp. at 1535. The court held that since Hallmark had chosen "a look so similar to [the plaintiff's] that it [was] nearly impossible to differentiate between the respective card lines, [Hallmark had] violated the core purpose of the Lanham Act." *Id.* at 1540. The confusion with this case comes from dicta that the court inserted later in the opinion where it stated that "[o]ne salutary purpose of the Lanham Act in this context is to protect a creative artist's rights in his or her creation and thus provide incentive to be creative." *Id.* Some, including the plaintiff in the instant case, have read this sentence to mean that artistic style is protectable under trademark law. This misunderstanding, however, was clarified on appeal.

> Contrary to Hallmark's contention, [plaintiff] has not been granted exclusive rights in an artistic style or in some concept, idea, or theme of expression. Rather, it is [plaintiff's] specific artistic expression, in combination with other features to produce an overall ... look, that is being protected. This protection does not extend the protection available under trademark· law and does not conflict with the policy of copyright law.

*Hartford House, Ltd. v. Hallmark Cards, Inc.,* 846 F.2d 1268, 1274 (10th Cir.1988).

*Romm Art* was a trade dress dispute between competing distributors of fine art posters. Romm Art sold posters of artwork by the Israeli artist Tarkay while Simcha sold posters of similar artwork by an artist named Patricia Govezensky. *Romm Art,* 786 F.Supp. at 1129. Without directly addressing the issue of whether an artist's visual style can be considered a trademark and without finding that the artwork had been identified with any products or services, the court held that the Tarkay posters were protectable under the Lanham Act. *Id.* at 1135. In so doing, the court mistakenly relied on the *Hartford House* district court's dicta, *id.* at 1134–35, and "confused the popularity of Tarkay the artist with the use of the 'Tarkay

look' as a product source designator." Fitzpatrick, *supra,* at 464. Therefore, the *Romm Art* holding is contrary to the basic tenets of trademark law.

Other federal courts faced with similar fact patterns have wisely recognized that, to the extent the plaintiffs have any claims at all, they do not arise under the Lanham Act; rather, plaintiff's remedy, if any, arises under copyright law. *See, e.g., Galerie Furstenberg,* 697 F.Supp. at 1289–90. Indeed, these courts have noted that the overextension of trademark law can undermine the principles of copyright law. *See Jeffrey Milstein, Inc.,* 58 F.3d at 32 ("[O]verextension of trade dress protection can undermine restrictions in copyright and patent law that are designed to avoid monopolization of products and ideas."); *Coach Leatherware Co. v. AnnTaylor, Inc.,* 933 F.2d 162, 171 (2d Cir.1991) ("Lanham Act protection does not extend to configurations of ornamental features which would significantly limit the range of competitive designs available. We are concerned that the grant of such broad relief chills competition excessively."); *Traphagen, supra,* at 5 (arguing that *Romm Art*'s "mistake ... threatens to extend the Lanham Act's reach beyond that contemplated by Congress, [invades] the purview of the Copyright Act, and restrict[s] artistic discourse").

 This Court finds persuasive the arguments of those who favor limits on the use of trademark law. The potential for undermining copyright law is readily apparent in a case such as this one. Though, under copyright law, plaintiff is not entitled to protection of his idea (the use of a forlorn cemetery statue to represent final judgment), 17 U.S.C. § 102(b), an expansive application of the principles of trademark law as in *Romm Art* would allow plaintiff the very protection denied him under copyright law. Since the plaintiff's photograph of the Bird Girl has become a symbol of Jack Leigh the artist, the *Romm Art* analysis would dictate that any use of the Bird Girl in connection with the book or movie would be a violation of plaintiff's trademark rights in the photo-

graph. *Romm Art,* 786 F.Supp. at 1141 (holding that "[t]he continued presence of the imitative Patricia trade dress in galleries and shops will erode the uniqueness of the Tarkay mark"); Fitzpatrick, *supra,* at 464 ("This approach suggests that future plaintiffs need only prove consumer confusion regarding a marketed artwork's 'overall general impact' to merit trade dress protection of visual style applied to a general theme—even if copyright law's 'substantial similarity' requirement would deny such protection."). Such a monopoly over ideas or themes was not contemplated by the copyright law, 17 U.S.C. § 102(b), and this Court will not use trademark law to circumvent that prohibition.

In short, plaintiff cannot show that he has a valid trademark, service mark or trade dress because trademark law should not be used to protect his visual style. Such a use would ignore the identification requirement of trademark law, would overly extend the reach of trademark law, and would circumvent copyright law's prohibition on the protection of ideas.[11]

### B. Likelihood of Confusion

■ Even if plaintiff could establish that he has a valid mark or dress, defendant is entitled to judgment as a matter of law because plaintiff cannot meet the summary judgment standard on the issue of likelihood of confusion. In the Eleventh Circuit, a number of factors are considered in determining whether a likelihood of consumer confusion exists. Those factors are "type of trademark, similarity of design, similarity of the product, the identity of retail outlets and purchasers, the similarity of advertising media used, defendant's intent, and actual confusion." *E. Remy Martin & Co. v. Shaw-*

*Ross Int'l Imports, Inc.,* 756 F.2d 1525, 1530 n. 15 (11th Cir.1985). Plaintiff cannot satisfy this test.

Plaintiff argues that the strength of his mark justifies an inference of likelihood of confusion. In this Circuit, one factor in determining the strength of a mark is the extent of third-party use of the mark. *Id.* at 1533. Defendant submitted in its last brief many examples of third-party uses of this mark. The first is a t-shirt bearing what appears to be a painting of plaintiff's photograph with the logo "Midnight in the Garden of Good & Evil" above and below the painting. Other examples include disposable camera packaging, postcards, canvas bags, paper shopping bags, keychains and pins and refrigerator magnets all bearing images of the Bird Girl that are as similar to plaintiff's image as Warner Bros.' images are. Given the extensive third-party use of the mark, plaintiff's mark could only be considered weak. Therefore, this factor does not justify a finding of likelihood of confusion.

Similarly, plaintiff cannot show similarity of design. As indicated in this Court's discussion of the copyright issue *supra,* there is little similarity of design between plaintiff's work and defendant's promotional images and film footage other than the choice of subject matter. Both parties reproduced images of a sculpture. Neither party created the sculpture. Neither party is selling the sculpture. The mere fact that all the images include the Bird Girl is not enough to prove similarity of design. "In evaluating the similarity of marks, we must consider the overall impression of the appearance ... and meaning of the marks, as well as the manner in which they are displayed." *Id.* at 1531. As discussed in the context of the copyright

---

**11.** Plaintiff cites several other theories which are clearly inapposite to this case. Plaintiff first cites authority for the proposition that it is a violation of the Lanham Act for a defendant to use a photograph of plaintiff's products to sell its own. *See* 3 *McCarthy* § 27:74. Defendant photographed the Bird Girl replica *and not the plaintiff's product.* Nor do cases involving a garbled version of an artist's work apply in this case. Plaintiff cites *Gilliam v. American Broadcasting Co.,* 538 F.2d 14 (2d Cir.1976), for the proposi-

tion that distorting or mutilating an artist's work and then presenting it as an original work of the artist violates the Lanham Act. Warner Bros. has not distorted plaintiff's work nor has it attributed its images to plaintiff; in fact, it created its own images of the Bird Girl. Since plaintiff's name is not associated with any of Warner Bros.' images, plaintiff will not suffer any consequences from the distribution of those images. Therefore the *Gilliam* theory does not apply to this case.

claims, the overall impression of the appearance of the images supports the finding that the marks are not similar.

Furthermore, plaintiff and defendant are selling different products. The test for similarity of product is "whether the products are the kind the public attributes to a single source." *Id.* at 1530. Plaintiff sells original fine art photographs, while defendant sells motion pictures and home entertainment. These products are not the kind that would be attributed to a single source. Therefore, the products are not similar for purposes of determining likelihood of confusion.

Additionally, the parties are not competing for the same consumer, and the retail outlets and purchasers are not the same or similar. Fine art photographs and motion pictures are consumed in completely different retail establishments in completely different manners. Therefore, these factors do not support a finding of likelihood of confusion.

Also, there is little similarity in the advertising media used by the parties. Plaintiff advertises his photographs on the Internet and through museum brochures, classes and lectures. Warner Bros. advertises its products on the Internet, on television, on trailers to be played in movie theaters and in video rental stores, and through movie posters. Besides the common element of the Internet, the parties have no advertising media in common. Given the wide-spread use of the Internet by a multitude of diverse businesses, common use of the Internet alone is not enough to find similarity of advertising media. Thus, this factor also does not justify a finding of likelihood of confusion.

Similarly, plaintiff argues that defendant's intent to copy is evidence of likelihood of confusion. The intent which is covered in the test, however, is intent to adopt plaintiff's mark to derive the benefit of plaintiff's reputation. *Id.* at 1532. Plaintiff has produced no evidence that Warner Bros.' intent in using the Bird Girl image in connection with the movie was to capitalize on plaintiff's reputation. Rather, it appears that Warner Bros. intended to capitalize on the association of the statue with the theme or idea of judgment that is central to the story of both the book and the movie. This association, as discussed in the copyright analysis *supra*, is not something plaintiff can protect. *See also Jeffrey Milstein, Inc.*, 58 F.3d at 32 ("[O]verextension of trade dress protection can undermine restrictions in copyright and patent law that are designed to avoid monopolization of products and ideas."). Therefore, the factor of intent does not support a finding of likelihood of confusion.

Finally, plaintiff argues that there exists evidence of actual confusion that should allow his case to survive summary judgment. Affidavits by plaintiff's friend and a colleague stating that they were confused as to whether plaintiff allowed Warner Bros. to use his photograph in promotional materials are not sufficient to defeat a motion for summary judgment. *Slowiak v. Land O'Lakes, Inc.*, 987 F.2d 1293, 1295 (7th Cir.1993) ("Self-serving affidavits without factual support in the record will not defeat a motion for summary judgment."); *Universal Money Ctrs., Inc. v. American Tel. & Tel. Co.*, 22 F.3d 1527, 1535 (10th Cir.1994) ("De minimis evidence of actual confusion does not establish the existence of a genuine issue of material fact regarding likelihood of confusion ...."); *In re Frederick Warne & Co.*, 218 U.S.P.Q. (BNA) 345, 348 (Patent & Trademark Office Trademark Trial & Appeal Bd.1983) (rejecting use of affidavits that do not reflect the impressions of the buying public). Therefore, this factor also negates a finding of likelihood of confusion.

Application of the seven factors to this case does not support a finding of likelihood of confusion. *E. Remy Martin*, 756 F.2d at 1530 n. 15 (listing seven factors for finding of likelihood of confusion). Therefore, there is no genuine issue of material fact with respect to likelihood of confusion.

In summary, the Court finds that plaintiff owns no protectable trademark rights in his photograph. In the alternative, the Court finds that there is no likelihood of confusion as a result of the simultaneous use of the

images at issue. Therefore, defendant is entitled to summary judgment on the claims arising under the Lanham Act.

**IT IS HEREBY ORDERED** that defendant's motion for partial summary judgment on the copyright claims relating to all images but the defendant's Internet icon is granted.

**IT IS FURTHER ORDERED** that plaintiff's cross-motion for partial summary judgment is denied.

**IT IS FURTHER ORDERED** that defendant's motion for summary judgment on the Lanham Act claims is granted.